640 P.2d 1117

**Julian Roy GARCIA and Susan J. Garcia, individually and as husband and wife; and as next best friends of Michelle Lona and Michael Timothy Garcia, minors, Plaintiffs/Appellees,**

v.

**The CITY OF SOUTH TUCSON, a Body Politic, Defendant/Appellant.**

**No. 2 CA–CIV 3893.**

Court of Appeals of Arizona, Division 2.

Dec. 22, 1981.

Rehearing Denied Jan. 20, 1982.

Review Denied Feb. 17, 1982.

Richard D. Grand by James G. Heckbert, Tucson, for plaintiffs/appellees.

Stompoly & Even, P. C. by William G. Walker and Robert L. Murray, Tucson, for defendant/appellant.

## OPINION

HOWARD, Judge.

### I

On October 11, 1978, a team of officers from the City of South Tucson and the City of Tucson surrounded a house in South Tucson which was being occupied by a lone gunman who had been firing random shots from the residence. During an attempt to flush the gunman out, appellee Roy Garcia, a policeman for the City of Tucson, was shot in the back by a member of the South Tucson Police Department and, as a result, is now a paraplegic. Other facts will be set forth as they apply to the issues under discussion.

The jury found appellant negligent and awarded appellees damages in the sum of $3,592,213. The issues on appeal are: (1) Whether Garcia's sole remedy was workmen's compensation. (2) whether the "fireman's rule" prevents appellees from recovering damages; (3) whether "assumption of risk" and "sudden emergency" jury instructions should have been allowed; and (4) whether they jury verdict was excessive. We affirm.

### II

At the time of the incident, the City of Tucson police were rendering aid to the South Tucson police by virtue of an "Intergovernmental Agreement for Mutual Aid in Law Enforcement" which had been entered by all the various law enforcement agencies in the area pursuant to A.R.S. §§ 13–1362 (renumbered as § 13–3872 in 1978) and 11–952.

Section Two of the agreement states:
"The purpose of this agreement is to obtain maximum efficiency in cooperative law enforcement operations through mutual aid and assistance within each Party's jurisdiction pursuant to the prior consent herein given by the Chief Law Enforcement Officer and Governing Body of that Party."

Section Five of the agreement covers control in assistance operations and states:
"A Requesting Party shall have and exercise general control directing any assisting Party to places where they are needed; *however, the commanding officer for any assisting Party shall be responsible for exercising exclusive control over his forces in response to the general directions of the Requesting Party.*" (Emphasis added)

The requesting party in this instance was the South Tucson police which called for help when it perceived that it could not handle the situation by itself.

Appellant contends that Garcia's sole remedy is workmen's compensation because (1) the City of South Tucson and the City of Tucson were engaged in a joint venture and (2) the City of South Tucson is a statutory employer of Garcia. We do not agree.

In *Conner v. El Paso Natural Gas Company*, 123 Ariz. 291, 599 P.2d 247 (App.1979) we held that for the purposes of workmen's compensation, each individual joint venturer is the employer of all employees doing work on behalf of the joint venture and each employer is protected by the exclusive remedy provisions of the workmen's compensation laws.

■ Elements of a joint venture are found in *West v. Soto*, 85 Ariz. 255, 336 P.2d 153 (1959) and are as follows: (1) a contract; (2) a common purpose; (3) a community of interest; and (4) an equal right of control. The element which is missing here is the last one. As provision five of the agreement clearly shows, there was no equal right of control. The control of the requesting party is limited to directing the assisting party to a place where it is needed. Neither the requesting party nor the assisting party has the right to control the forces of the other in any other respect. There was no joint venture.

■ A.R.S. § 23–902(B) states:

"When an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is part or process in the trade or business of the employer, then such contractors and persons employed by him ..., are, within the meaning of this section, employees of the original employer."

Appellant argues that the City of South Tucson, by virtue of the mutual aid agreement, became the statutory employer of Garcia, thus limiting his remedy to workmen's compensation. We do not agree. The test to determine whether one doing work for another is an "independent contractor" or "employee" within the Workmen's Compensation Act is whether the alleged employer retains control over the method of reaching the required result or whether his control is limited to the result reached, leaving the method to the other party. *Industrial Commission v. Navajo County*, 64 Ariz. 172, 167 P.2d 113 (1946). Appellant had no control over the method used by the City of Tucson police to accomplish the desired result and was therefore not a statutory employer. Additionally, Section Five of the agreement provides that "[E]ach party shall be responsible and liable for damages caused by its personnel during the course of rendering mutual law enforcement assistance ..." further contradicting a joint venture, where joint liability could be expected to follow.

### III

■ The "fireman's rule" negates liability to a fireman by one whose negligence causes or contributes to the fire which in turn causes the death or injury of a fireman. *Grable v. Varela*, 115 Ariz. 222, 564 P.2d 911 (1977). The fireman cannot complain of negligence in the creation of the very occasion for his engagement. *Krauth v. Geller*, 31 N.J. 270, 157 A.2d 129 (1960). In terms of duty, it may be said that there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. *Krauth v. Geller*, supra. The pertinent inquiry is whether or not the negligently created risk which resulted in plaintiff's injury was the reason for his being at the scene in his professional capacity. *Scott v. E. L. Yeager Construction Co.*, 12 Cal.App.3d 1190, 91 Cal.Rptr. 232 (1970). The fireman's rule also applies to police officers. *Walters v. Sloan*, 20 Cal.3d 199, 142 Cal.Rptr. 152, 571 P.2d 609 (1977).

Garcia was shot when the sergeant in charge of the South Tucson Police Department ordered his personnel to assault a residence without warning the law enforcement officers that the assault was going to take place. Garcia was caught on the front porch when the assault took place and was shot by one of the South Tucson police officers who mistook him for the gunman.

■ The negligence which caused Garcia's injury was the negligence of the sergeant in control of the South Tucson police in ordering an assault without warning. The act which occasioned the summoning of the police in the first instance was the random shooting by the gunman. Since Garcia's injuries were caused by the independent negligence of a third person, the fireman's rule is inapplicable. The trial court did not err in failing to grant appellant's motion for a directed verdict which was based upon the fireman's rule.

### IV

Although the trial court gave a contributory negligence instruction, appellant contends it erred when it refused to instruct the jury on the doctrine of assumption of risk. Appellant argues that since Garcia testified that he knew he was in a dangerous position while standing on the porch, the doctrine of assumption of risk should have been submitted to the jury. We do not agree.

■ The elements of assumption of risk were set forth by us in *Hildebrand v. Minyard*, 16 Ariz.App. 583, 494 P.2d 1328 (1972), as follows:

"(1) There must be a risk of harm to plaintiff caused by defendant's conduct or by the condition of the defendant's land or chattels;

(2) Plaintiff must have actual knowledge of the particular risk and appreciate its magnitude. [citations omitted]

(3) The plaintiff must voluntarily choose to enter or remain within the area of the risk under circumstances that manifest his willingness to accept that particular risk."

A general knowledge of "a danger" is not sufficient, but rather plaintiff must have actual knowledge of the specific risk which injured him and appreciate its magnitude. Furthermore, although one may assume the risk of the negligence of another if he is fully informed of such negligence, one is not, under the doctrine of assumption of risk, bound to anticipate the negligent conduct of others. *Hildebrand v. Minyard*, supra. The failure to appreciate and comprehend the consequences of one's acts is properly a matter of contributory negligence and not assumption of risk. *Hildebrand v. Minyard*, supra.

■ As we pointed out in *Hildebrand*, there is a distinct difference between contributory negligence and assumption of risk. As with express assumption of risk, the touchstone of implied assumption of risk is "consent". Contributory negligence arises when the plaintiff fails to exercise due care. Assumption of risk arises regardless of the due care used as it is fundamentally based on consent. Contributory negligence is not. Garcia did not know that the assault was going to take place and did not consent to being shot at by the South Tucson Police Department. The court did not err in refusing to instruct on assumption of risk.

### V

Appellant contends the trial court erred in refusing to instruct the jury regarding the standard of care to be applied to negligence in a sudden emergency. During the course of the trial, it was Garcia's position that South Tucson was negligent in adopting a plan which called for the assault on the home, particularly without informing the Tucson Police officers of this plan. Garcia further claimed that the South Tucson police officer who shot him was also negligent.[1]

Appellant's objection to the refusal to give the sudden emergency instruction was based on the fact that it believed evidence showed the officer who shot Garcia did so because he was faced with a sudden emergency. Nowhere in the objection did appellant contend that the sudden emergency doctrine would apply to the conduct of the sergeant in charge of the South Tucson police in ordering the assault. For the first time on appeal, appellant now contends that the sudden emergency doctrine applied to

---

1. The jury exonerated the officer who shot Gar-   cia of any negligence.

the sergeant's conduct and that refusal to give the instruction was error.

There are two reasons why we reject appellant's argument. First of all, having failed to object to the instruction on the ground now urged, appellant waived any alleged error. Rule 51(a), Arizona Rules of Civil Procedure, 16 A.R.S.; *Cavanagh v. Ohio Farmers Insurance Company*, 20 Ariz. App. 38, 509 P.2d 1075 (1973). In addition, the facts do not support appellant's contention that the decision to assault the residence was made in the face of sudden, unexpected peril, with no time for deliberation. After the South Tucson police arrived on the scene, the gunman did not fire a shot. In fact, from the time that Garcia arrived on the scene until the assault took place, the gunman was sitting on a bed in the house smoking a cigarette.

### VI

Appellant's last contention is that the jury verdict was excessive and that the trial court should have granted its motion for a new trial on the issue of damages or, in the alternative, granted a remittitur. We do not agree. Where the trial court has refused to interfere with the jury's determination of damages, this court cannot interpose its own judgment on the issue unless convinced that the verdict is so outrageously excessive as to suggest, at first blush, passion or prejudice. *Wry v. Dial*, 18 Ariz. App. 503, 503 P.2d 979 (1973). As a result of his injury, Garcia is a paraplegic, is in chronic, constant pain, suffers from incontinence, impotency, physical dependency, and carries the psychological scars caused by this disaster. The verdict is not excessive.

Affirmed.

HATHAWAY, C. J., and BIRDSALL, J., concur.