197 N.J. Super. 22 (1984)
484 A.2d 24
DOMINICK ALESSIO AND CAROL ALESSIO, PLAINTIFFS-RESPONDENTS,
v.
FIRE & ICE, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 11, 1984.
Decided November 8, 1984.
*24 Before Judges PRESSLER, BRODY and HAVEY.
Hoagland, Longo, Oropollo & Moran, attorneys for appellant (James B. Moran, of counsel; Vincent R. Glorisi, on the brief).
Alfred F. Maurice, attorney for respondents (Alfred F. Maurice, of counsel; Alfred F. Maurice and Raymond F. Flood, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This is an appeal, on leave granted, from the denial of defendant's motion for summary judgment dismissing the complaint. The issue before us involves the so-called fireman's rule. The rule, as originally articulated in Krauth v. Geller, 31 N.J. 270 (1960), denies a firefighter, injured while fighting a fire, a right of recovery from the person whose ordinary negligence caused the fire. In Berko v. Freda, 93 N.J. 81 (1983), the rule was extended to police officers, denying an on-duty officer who is injured while responding to a police emergency a cause of action against the person whose ordinary negligence resulted in the situation which required intervention. The question raised by this appeal is whether the rule applies to *25 off-duty police officers as well. We conclude that this question is not subject to a simple categorical answer but rather that the applicability of the rule depends on a realistic determination of whether, in the particular circumstances, the off-duty officer was acting as a police officer or as a volunteer.
Plaintiff Dominick Alessio,[1] a police officer of the Borough of Fairview, instituted this personal injury action against defendant Fire & Ice, Inc., the owner of a tavern in that municipality. Plaintiff seeks to recover for injuries he sustained when, at the request of a tavern employee, he attempted to quell a disturbance at the tavern to which he had come as a patron while off duty and out of uniform. The gravamen of plaintiff's action is his claim that defendant's negligence in not properly supervising the premises and in serving alcohol to intoxicated patrons was the proximate cause of the injuries he suffered.
Defendant's first motion for summary judgment, based on the contention that this action was precluded by the fireman's rule, was granted. Plaintiff appealed, and we reversed in an unreported decision in which we noted that the fireman's rule had not been extended by the decisional law to "off-duty policemen under all circumstances." It was our conclusion, based on the record then before us, that there was a question of fact as to plaintiff's actual status at the time of the assault. We therefore remanded for "full discovery and trial, if necessary." Following the remand, defendant again moved for summary judgment, this time submitting the full transcript of plaintiff's deposition, which constituted the bulk of pretrial discovery. Its argument was that the record as so supplemented demonstrated beyond factual dispute that plaintiff was acting as a police officer when he was injured and hence that the fireman's rule applied. A different judge considered the second motion and denied it on the ground that the record did not exclude the possibility that the circumstances of the assault *26 rendered the fireman's rule inapplicable. More particularly, he was apparently of the view that the facts, viewed most favorably to plaintiff, would support an inference that the assault may have been caused by an act of negligence committed subsequent to the creation of the original hazard. We affirm the denial of the motion, but for different reasons.
The record shows that plaintiff had been a Fairview police officer for almost fifteen years when this incident occurred. His previous police experience in dealing with tavern disturbances had all been while on duty. On these occasions he was dispatched by his headquarters to the scene with his partner, both presumably in uniform. On the night in question, plaintiff had gone to the tavern while off duty to meet a friend. He was not in uniform but was carrying his badge and his service revolver, as required by department regulation. As he entered the tavern he noticed four or five men standing on the sidewalk just outside the tavern door. These people were engaged in a verbal confrontation with a group of two men and two women who were standing just inside the door. Plaintiff made his way to the bar to look for his friend and was almost immediately approached by the tavern "bouncer" who knew him to be a local police officer. The bouncer, apparently concerned about the escalating intensity of the confrontation, asked him to assist in quieting down the two groups.
Plaintiff accompanied the bouncer to the entrance-way and spoke first to the group inside the tavern. The two men were both drinking and were verbally threatening and cursing at the group outside. Plaintiff believed that they were intoxicated. He showed them his badge, identified himself as a police officer, and tried to quiet them down, telling them they had had enough to drink and should leave. Believing that he had defused that group, plaintiff then went out the door to talk to the group of men on the sidewalk. He spoke to them briefly, suggested that they disperse and started to walk away from the tavern with them. At that point, one or more of the *27 "inside" combatants came rushing out of the tavern, assaulted plaintiff from behind, and brutally beat him.
While the record is not explicit as to the lapse of time between plaintiff's exiting of the tavern and the physical attack upon him, it appears, at least inferentially, that the sequence of the described events was uninterrupted and that only moments had passed. The record also does not indicate any particular reason for the attackers to have taken the action they did. Nor does it indicate whether the attack on plaintiff was part of the course of continuous events which began with the verbal confrontation between the two groups or was induced or motivated by some independent cause. Plaintiff, however, makes no suggestion that there was in fact any such independent cause. We therefore address the issue before us on the assumption that an efficient producing cause of plaintiff's injuries was the ordinary negligence of defendant in permitting the development and escalation of the disturbance which resulted in plaintiff's injuries when he attempted to intervene.
The fireman's rule, applicable to both firefighters and police officers, has become a firmly entrenched principle of negligence law throughout this country, criticized by the academic authorities, but nevertheless almost uniformly embraced by the courts. See, e.g., Prosser, Torts (4th ed., 1971) § 61 at 397-398; 2 Harper & James, Torts (1956) § 27.14 at 1501-1505. But see, extending the rule to police officers, Garcia v. City of Tucson, 131 Ariz. 315, 640 P.2d 1117 (Ct.App. 1982); Walters v. Sloan, 20 Cal.3d 199, 142 Cal. Rptr. 152, 571 P.2d 609 (Sup.Ct. 1977; Tobriner, J., dissenting); Whitten v. Miami-Dade Water and Sewer Auth., 357 So.2d 430 (Dist.Ct.App.Fla. 1978), cert. den. 364 F.2d 894 (Sup.Ct. 1978); Pottebaum v. Hinds, 347 N.W.2d 642 (Sup.Ct.Iowa 1984); Solis v. Civic CTR Site Development Co., Inc., 385 So.2d 1229 (Ct.App.La. 1980), cert. den. 390 So.2d 1343 (Sup.Ct. 1980); Hannah v. Jensen, 298 N.W.2d 52 (Sup.Ct.Minn. 1980; Scott, J., dissenting); Nared v. School Dist. of Omaha in Cty. of Douglas, 191 Neb. 376, 215 N.W.2d 115 (Sup.Ct. 1974); Steelman v. Lind, 97 Nev. 425, 634 P.2d 666 *28 (Sup.Ct. 1981); Scheurer v. Trustees of Open Bible Church, 175 Ohio St. 163, 192 N.E.2d 38 (Sup.Ct. 1963). See also cases collected in Annot., 11 A.L.R.4th 597, "Liability of Owner or Occupant of Premises To Firemen Coming Thereon in Discharge of His Duty." See contra Christensen v. Murphy, 296 Or. 610, 678 P.2d 1210 (Sup.Ct. 1984), rejecting the rule in respect both of policemen and firemen. And see also the dissent by Justice Handler in Berko v. Freda, 93 N.J. at 91. Insofar as we have been able to determine, the question of the applicability of the rule to an off-duty police officer has been addressed in only one jurisdiction, Louisiana, which apparently perceives no distinction in this context between on-duty and off-duty officers. See Weaver v. O'Banion, 359 So.2d 706 (Ct.App.La. 1978). We disagree with that perception.
The cases adopting the fireman's rule and extending it to police officers have done so by relying on a variety of more or less apposite traditional negligence theories. In determining whether the rule should be extended in this jurisdiction to off-duty police officers, we must, however, be guided by the rationale upon which the New Jersey Supreme Court relied in adopting the rule in Krauth and Berko. Our task is to ascertain whether that rationale fairly encompasses the off-duty police officer.
As we read Krauth and Berko, both are essentially based on public policy considerations. Although both speak in terms of the assumption of risk in the primary sense, both ultimately recognize that in balancing the competing public and private interests here implicated, the paramount concern must be public safety. See also Trainor v. Santana, 86 N.J. 403 (1981). Hence, a rule imposing liability must be avoided if its consequence would be the deference or chilling of the citizen's ready willingness, when faced with a threat to public or individual security which he himself has negligently created, to seek the intervention of public safety professionals. The countervailing justification for placing these considerations before the private tort recovery rights of firefighters and police officers is that *29 these public employees are hired for the express purpose of responding to these threats and that their professional undertaking is unaffected, both as to function and risk, by the cause of the threat. We do not, nor could we, argue against this public policy decision. We conclude, however, that it does not necessarily embrace the off-duty officer.
The implicit predicate of the "assumption of the risk" counterweight is the premise that police officers are not only hired to confront public dangers but are also specially trained and equipped to do so, functioning within and as part of a para-military organization whose administration, operational procedures, rules and regulations afford them the maximum available quantum of protection in performing their hazardous duties. In our view, compelling an off-duty officer to confront a public danger outside of the protective organizational structure and unshielded by the protective measures and circumstances which would have obtained had he been acting on duty in the same situation would remove a vital counterweight to the public policy concerns. Where this counterweight is absent, we conclude that the fireman's rule should not apply.
The problem here, as we see it, evolves from the notion that a police officer is always on duty. The fact, of course, is that the status of the off-duty officer is a matter of contextual determination not subject to absolute delineation.
For example, the question of the status of an off-duty police officer is often required to be considered in the context of remedial social legislation. Since such legislation is liberally construed in favor of its subject class, the off-duty officer is, in that context, ordinarily afforded the full benefit of his employment rights on the factual theory that the course of his employment extends beyond the performance of his regular duty. See, e.g., allowing worker's compensation recovery to off-duty officers, Jasaitis v. Paterson, 31 N.J. 81 (1959) (compensation allowed to a policeman injured while returning home from duty but still in uniform on the ground that he was permitted by *30 department regulation to wear his uniform for a period of time after the conclusion of his assigned tour of duty and was also required by regulation to perform duties whenever in uniform if the need for public service arose); Van Ness v. Haledon, 136 N.J.L. 623 (E. & A. 1947) (compensation allowed to a police marshall who sustained a heart attack while responding on an emergency basis to an accident call even though he was not at that time expressly assigned to duty); Kossack v. Bloomfield, 63 N.J. Super. 322 (Cty.Ct. 1960) (compensation allowed to an off-duty officer injured while cleaning his service revolver at home on the ground that an officer is obliged to keep his revolver clean and serviceable at all times). See also Wunschel v. City of Jersey City, 96 N.J. 651 (1984). And see Van Horn v. City of Trenton, 80 N.J. 528 (1979) (allowing indemnification pursuant to N.J.S.A. 40A:15-155 for counsel fees incurred by a police officer in defending charges made against him arising out of police activities he engaged in while off duty).
Where remedial legislation is not involved, the status of an off-duty police officer appears to be more discretely defined and distinctions between on-duty and off-duty are more sharply drawn than the "always on duty" shibboleth would suggest. The statutes themselves indicate a clear demarcation in status. Illustratively, N.J.S.A. 40A:14-133 prohibits the on-duty employment of a police officer in excess of six days in any single week but permits an officer to be retained on duty in the event of an emergency, subject, however, to his right to equivalent compensatory time off. N.J.S.A. 40A:14-135 provides that when a police officer is required to make court appearances outside his assigned duty hours, he is entitled to receive either compensatory time off from regular duty hours or additional compensation. The point, of course, is that these statutes recognize what is in fact the reality, namely, that police officers, even though subject to recall when emergencies arise, are nevertheless not always on duty.
*31 This does not mean, however, that an officer is relieved of all service-related obligations during off-duty hours. While off duty, he must report back to regular duty when directed to do so, he must obey orders given by proper authority, and he must comply with the rules and regulations of his department which are reasonably applicable to that status. See Ward v. Keenan, 3 N.J. 298 (1949); Reiman v. Breslin, 175 N.J. Super. 353 (App.Div. 1980), certif. den. 85 N.J. 147 (1980); Rivell v. Civil Service Commission, 115 N.J. Super. 64, 70 (App.Div. 1971), certif. den. 59 N.J. 269 (1971); Borough of Jamesburg v. Hubbs, 18 N.J. Super. 5 (App.Div. 1952).
The nub of the problem here is the perception of police officers that while off duty they are obliged to respond to direct requests from citizens for assistance. This perception derives not only from the "always on duty" mythology but also from departmental regulations and policies which so suggest. See, e.g., Van Horn v. City of Trenton, supra, 80 N.J. at 532, n. 1; Jasaitis v. Paterson, supra, 31 N.J. at 85-86; Kossack v. Bloomfield, supra, 63 N.J. Super. at 324-325. As a consequence of this obligation, whether actual or reasonably perceived, the off-duty officer is placed in an ambiguous and anomalous situation since he may feel compelled to render assistance at the call of citizens, whether or not the circumstances permit him to do so as effectively as he could have if responding to that call while on duty or with the same degree of personal safety. Thus, the off-duty officer may regard himself as unable to refuse assistance without violating his general obligations as a police officer, but he may nevertheless be unable to render assistance without subjecting himself to undue risk, namely, risk beyond that which his regular duties oblige him to assume in similar situations. His assumption of that undue risk may, therefore, constitute an appropriate and reasonable response, if not an obligatory response, to the situation confronting him. In these circumstances, his status is functionally that of a volunteer, not that of a police officer.
*32 The facts before us demonstrate our point. Plaintiff, while off duty and out of uniform, was asked to assist in quieting a barroom disturbance. We regard that undertaking as inherently dangerous. It is no coincidence that of the cases which have dealt with the fireman's rule as applied to on-duty police officers, a substantial number of them have involved injuries sustained by an officer while dealing with intoxicated people. See Walters v. Sloan, supra; Pottebaum v. Hines, supra; Hannah v. Jensen, supra; Weaver v. O'Banion, supra. See also, Entwistle v. Draves, 194 N.J. Super. 571 (Law Div. 1984). It may be inferred from plaintiff's deposition testimony that when a call of this nature is received by headquarters, a team of uniformed officers is dispatched to deal with it in a marked police car, and with the ability to communicate with headquarters and with back-up units. We note that the publication of the Field Service Division of the International Association of Chiefs of Police, advising on the handling of street and bar disturbances warns against a single officer attempting to intervene in a fight in progress and instructs him to wait for the arrival of his cover car. See Training Key 16, "Handling Disturbance Calls," at 3 (1964).
The reasons for these procedures are obvious. First, the wearing of the uniform itself offers protection to the police officer. As suggested by the Supreme Court in Jasaitis v. Paterson, supra, 31 N.J. at 85-86 a uniformed presence acts as a substantial deterrent to an imminent breach of peace. Clearly, an aggressive drunk is likely to respond more circumspectly to a uniformed officer than to one out of uniform who merely identifies himself as an officer. Several uniformed officers and the presence of a fully equipped police vehicle must surely act as an even greater deterrence, both psychologically and functionally.
This plaintiff, in responding to the assistance call at the bar, out of uniform, alone, and without any department back-up, had none of these protections. His response, therefore, appears to have required him to assume risks which a regularly dispatched *33 officer would not have had to incur. His conduct therefore could, in the circumstances, be properly characterized as that of a volunteer, not a police officer.
In Walsh, et al. v. Madison Park Properties, et al., 102 N.J. Super. 134, 138-139 (App.Div. 1968), we expressed the view that the fireman's rule does not apply where the firefighter is injured as a result of risks beyond those inevitably involved in his professional undertaking. So here. We do not suggest that every off-duty officer in responding to a citizen's call necessarily assumes undue risks which place him outside of the fireman's rule. Whether he does depends on the nature of the call, the manner in which such calls are ordinarily officially responded to, and the manner in which the circumstances require him to respond. If the off-duty officer's response is attended by his having to expose himself to a degree of personal vulnerability against which he would have been protected had he been on duty, we are satisfied that he must, for purposes of the fireman's rule, be regarded as a volunteer and not as a professional officer. Hence, the fireman's rule would not bar him from pursuing his cause of action against the person whose negligence created the need for intervention.
It is well settled that one who negligently creates a risk of harm may be liable to a volunteer whose intervention is reasonably foreseeable and who exposes himself to personal peril in order to avert the danger to others or personal property. See Justice Handler's dissent in Berko v. Freda, supra, 93 N.J. at 91; Harrison v. Middlesex Water Co., 158 N.J. Super. 368, 376 (App.Div. 1978), rev'd on other grounds 80 N.J. 391 (1979); Eyrich For Eyrich v. Dam, 193 N.J. Super. 244, 256 (App.Div. 1984). See also Restatement, Torts 2d, § 472 (1965). A volunteer may himself be negligent if he acts unreasonably in the circumstances. When the volunteer is, however, an off-duty officer responding to a citizen request for assistance, the evaluation of the reasonableness of his conduct must take into account his actual or reasonably perceived obligation to *34 render assistance even if by so doing he was assuming an undue risk of personal injury.
Finally, we hold that the finder of fact must make the determination of whether the off-duty officer, in the circumstances, assumed undue risks and whether he acted reasonably in so doing. While the record before us suggests that, for the reasons herein stated, the fireman's rule would not apply here, we are nevertheless satisfied that the ultimate determination requires the presentation and finding of facts at trial.
The order denying defendant's motion for summary judgment is affirmed, and we remand to the trial court for further proceedings.
NOTES
[1] His wife, plaintiff Carol Alessio, sues per quod.