108 P.3d 936

Elizabeth ESPINOZA, an unmarried woman, Plaintiff/Appellant,

v.

Carrington SCHULENBURG, an unmarried woman; John Schulenburg and Debra Schulenburg, husband and wife, Defendants/Appellees.

No. 1 CA–CV 04–0438.

Court of Appeals of Arizona, Division 1, Department A.

March 10, 2005.

Curran & Belville, P.A. By Christopher J. Curran, Chad L. Belville, Tempe, Attorneys for Plaintiff–Appellant.

Jones, Skelton & Hochuli, P.L.C. By Ronald W. Collett, Randall H. Warner, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

SULT, Judge.

¶ 1 While off-duty, Appellant Elizabeth Espinoza, a Phoenix firefighter and emergency medical technician, stopped to render assistance at the scene of an accident involving Appellees John and Debra Schulenburg and their daughter, Carrington. Espinoza was injured at the scene by another driver and later instituted this action, which included the Schulenburgs as defendants under the rescue doctrine. However, the trial court held that the fireman's rule precluded Espinoza from attempting to impose liability on the Schulenburgs and dismissed them as defendants.

¶ 2 In this opinion, we reiterate and enforce the principle that in Arizona, the fireman's rule as an exception to the rule of liability reflected in the rescue doctrine is to be applied narrowly. Because we find that the trial court's application of the rule violates this principle, we reverse the trial court's judgment. In so doing, we hold that the fireman's rule will not bar an off-duty firefighter or law enforcement agent from seeking recovery for injuries sustained while undertaking a rescue or rendering aid, if the professional is acting truly as a volunteer and is not under an employment mandate to respond when off-duty.

## BACKGROUND

¶ 3 On February 10, 2002, Carrington Schulenburg was driving on State Route 101 with her parents, John and Debra Schulenburg, as passengers when they were involved in an automobile collision. Espinoza, a Phoenix firefighter/EMT was driving home with her nine-year-old daughter when she came upon the scene. Espinoza's normal duties as a firefighter/EMT included driving a fire truck, providing medical assistance at fires or accident scenes, and attaching fire hoses. Espinoza stopped and offered her assistance to a Department of Public Safety officer who was already present. At the direction of the officer, Espinoza attended to the Schulenburgs. She inquired of the Schulenburgs if they were in need of medical attention and then instructed them to move away from their vehicle.

¶ 4 The Schulenburg vehicle had come to rest partly on the left side shoulder and partly in the left through lane. Espinoza leaned into the vehicle to activate its emergency flashers, and as she did so, a vehicle driven by Casey John Barnett struck the rear of the vehicle. Espinoza sustained a broken hip, broken wrist, torn knee ligaments, a broken finger, and other injuries. She applied for and received workers' compensation benefits.

¶ 5 Espinoza filed suit against the Schulenburgs, Barnett, and DPS for negligence. Espinoza alleged that Carrington Schulenburg's negligence in causing the initial collision was a direct and proximate cause of her injuries because it resulted in Espinoza's stopping at the scene to render assistance. John and Debra Schulenburg were included on a theory of negligent entrustment, Espinoza asserting that they permitted their daughter to drive knowing that she was not properly licensed.

¶ 6 The Schulenburgs moved for summary judgment arguing that the fireman's rule precludes a firefighter or police officer who is injured while providing professional services from suing the person whose negligence made necessary the rendering of those services. Espinoza filed a cross-motion arguing that the rule should not apply to her because she was off-duty when she rendered assistance and encountered a greater risk of injury than she would have had she been on-duty.

¶ 7 The trial court found Espinoza's claim barred by the fireman's rule and dismissed all claims against the Schulenburgs. The court entered judgment accordingly, including appropriate finality language pursuant to Rule 54(b), Arizona Rules of Civil Procedure, and Espinoza timely appealed.

## ANALYSIS

■ ¶ 8 The rescue doctrine holds that an injured rescuer may recover damages from the original tortfeasor who negligently caused the event that precipitated the rescue. *Orth v. Cole*, 191 Ariz. 291, 293, ¶ 9, 955 P.2d 47, 49 (App.1998). The doctrine recognizes the natural human impulse to aid others in distress and rewards this impulse by including its manifestation within the realm of the forseeable results of a negligent act. *Wagner v. International Railway Co.*, 232 N.Y. 176, 133 N.E. 437, 437–38 (1921). Thus, when a rescuer is injured in the process of rendering aid, that injury is considered proximately caused by the negligence of the original tortfeasor notwithstanding that the immediate cause may be an intervening act of negligence by another. *Krause v. United States Truck Co.*, 787 S.W.2d 708, 710–11

(Mo.1990); *see* 1 Dan B. Dobbs, *The Law of Torts* § 184, at 456 (2001).

■ ¶ 9 The fireman's rule arose from different conceptual origins than the rescue doctrine, being based originally on premises liability and concerned only with the legal question of duty. *Heck v. Robey*, 659 N.E.2d 498, 501 (Ind.1995); Dobbs, *supra* § 285, at 769. When the fireman's rule intersects the rescue doctrine, the former operates essentially as an exception to the latter's imposition of liability by removing a professional firefighter injured while performing firefighting duties from the class of rescuers protected by the doctrine. *Orth*, 191 Ariz. at 293, ¶ 9, 955 P.2d at 49.

¶ 10 The rule was first recognized in Arizona in *Grable v. Varela*, 115 Ariz. 222, 564 P.2d 911 (App.1977), where it was employed to "negate[ ] liability to a fireman by one whose negligence causes or contributes to the fire which in turn causes the death or injury of the fireman." *Id.* at 223, 564 P.2d at 912. In concluding that the fireman's rule barred the on-duty firefighter's claim, the *Grable* court noted that the rule was based primarily on policy considerations and, quoting the New Jersey Supreme Court, stated:

> It is the fireman's business to deal with that very hazard and hence ... he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said that there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences.

*Id.* (quoting *Krauth v. Geller*, 31 N.J. 270, 157 A.2d 129, 131 (1960)).

¶ 11 The rule was conceptually extended to police officers injured in the line of duty in *Garcia v. City of South Tucson*, 131 Ariz. 315, 318, 640 P.2d 1117, 1120 (App.1981). However, even though *Garcia* acknowledged

the rule covered police officers, the court determined the rule should be applied narrowly. Thus, in considering the claim of the injured on-duty police officer against a third person not the original tortfeasor, the court declined to apply the rule because the claim was based on the independent negligence of the third person, not on the negligence of the person who caused the officer to be on the scene. *Id.* at 319, 640 P.2d at 1121.

¶ 12 *Orth* emphasized the narrow scope of the fireman's rule when it declined to apply the rule to bar recovery by a firefighter injured while conducting a routine, unannounced safety inspection. 191 Ariz. at 292, ¶ 5, 955 P.2d at 48. Notwithstanding that the firefighter was on duty at the time, the court commented that to apply the rule to routine inspections would expand it beyond the original purpose. *Id.* at 293, ¶ 8, 955 P.2d at 49. Rather, the rule should be limited to actual emergency situations where the professional has no choice but to encounter the imminent danger, and it should not be applied to non-emergency activities where the professional can choose not to proceed if the danger presented is unreasonable. *Id.* at ¶ 10 (citing *Gray v. Russell,* 853 S.W.2d 928, 930–31 (Mo.1993)).

■ ¶ 13 Arizona has yet to determine whether the fireman's rule should apply when the public safety professional is off-duty but voluntarily attempts a rescue or renders aid. Addressing this omission, we find that to the extent the fireman's rule bars recovery because the firefighter or police officer expects to encounter hazards while on the job, *Grable,* 115 Ariz. at 223, 564 P.2d at 912, or that he renders aid not from a humanitarian impulse to help but because he is being paid, *Heck,* 659 N.E.2d at 502, these justifications cannot support extending the rule to an off-duty public safety professional who makes a voluntary effort to assist. This type of effort is precisely what the rescue doctrine was designed to protect, and we can conceive of no public policy that would be advanced by precluding such a volunteer from the benefit of the rescue doctrine. To the contrary, Arizona's narrow construction that confines the fireman's rule within the framework of its original justifications dic-

tates that we should not apply it to off-duty public safety professionals when they voluntarily attempt a rescue or render aid.

¶ 14 Before pronouncing our holding, however, we acknowledge that some off-duty professionals may be under an employment mandate to render aid in emergency situations notwithstanding their off-duty status. Departmental policies or regulations may need to be consulted in order to make this determination. If such governing policies or regulations require an off-duty response to particular emergency situations, this may place the professional in a *de facto* on-duty status and strip his ensuing engagement of the voluntary characterization needed to forestall application of the fireman's rule.

¶ 15 With this *caveat* in mind, we hold that if a public safety professional is under no employment obligation to attempt rescue or render aid, but may with legal and professional impunity choose not to engage, the fireman's rule will not bar recovery if the professional nevertheless attempts rescue or renders aid and is injured while doing so.

¶ 16 Because our holding is premised upon the professional having the choice whether to act, we disagree with those courts that ignore the preliminary inquiry into the existence of an employment obligation and apply the fireman's rule to off-duty public safety professionals merely because the professional when volunteering to aid in an emergency situation is doing the same thing he would do if he were on-duty. In effect, these courts hold that the off-duty professional who lends expertise in order to aid in an emergency situation sacrifices the protection of the rescue doctrine when he does so, notwithstanding that he was free to choose otherwise.

¶ 17 This broad application of the fireman's rule is evident in *Hodges v. Yarian,* 53 Cal. App.4th 973, 62 Cal.Rptr.2d 130 (1997), where an off-duty deputy sheriff shot and arrested a suspected burglar in the deputy's own garage and suffered wage loss and emotional distress as a consequence. He later sued the managers of his apartment building for failure to address certain security problems. *Id.* at 132. However, solely because he was performing off-duty the same activity he performed on-duty, the court applied the

fireman's rule to bar the deputy's lawsuit with no inquiry into whether he was under any requirement to have responded at all. *Id.* at 134.

¶ 18 A variation of the *Hodges* approach that retains the basic conflation of the on-duty/off-duty roles but opens a narrow window for the professional to escape the stricture of the fireman's rule is exemplified by *Alessio v. Fire & Ice, Inc.,* 197 N.J.Super. 22, 484 A.2d 24 (Ct.App.Div.1984). There, an off-duty police officer patronizing a tavern was asked by a tavern employee, who knew he was a police officer, to assist in quelling a disturbance. *Id.* at 25–26. The officer was injured and sued the tavern for negligence in not properly supervising the premises and serving alcohol to intoxicated patrons. *Id.* at 26.

¶ 19 In deciding whether the fireman's rule barred suit, the court determined that it was necessary to find whether the officer subjected himself to risks beyond what he would face in similar on-duty situations. If so, he was acting not as a police officer but as a volunteer, but on remand it would be the burden of the police officer to demonstrate this. *Id.* at 30. The *Alessio* court did not specifically inquire whether any applicable department regulations required the officer to respond to the request for assistance, merely noting from other cases that such regulations may "suggest" that an officer is always on-duty. *Id.* at 29.

¶ 20 Unlike *Hodges* or *Alessio,* our holding has the virtue of clearly placing the off-duty professional on the same legal footing as an ordinary civilian volunteer, assuming that the professional is under no employment obligation to stop and assist. This equating of civilian and professional volunteers is consistent with logic and fairness, and by declining to follow the *Hodges/Alessio* line of cases and penalize off-duty professionals by stripping them of tort law protection, our holding serves the significant policy objective of encouraging professionals otherwise under no obligation to provide their expertise where it may make a life-saving difference. Our holding also avoids *Alessio*-style case-by-case risk analysis with its inevitable inconsistent results as well as its consumption of judicial energy devoted to what essentially is a collateral matter. In short, our holding illustrates the wisdom of Arizona's approach to the fireman's rule that limits its application to only those on-duty situations where its underlying rational permits its application.

¶ 21 We turn now to the implementation of our holding. The Schulenburgs argue in accordance with *Hodges* that Espinoza was doing what she was trained to do, thus her off-duty status was not relevant to the application of the fireman's rule. Espinoza responds that she was a volunteer entitled to the benefit of the rescue doctrine because she was off-duty and traveling home after work with her daughter in her car. She adds that had she been in her official capacity when she stopped to assist at the accident scene, she would have had the protective environment of fire department vehicles with hazard lights and other department personnel to warn of impending danger. In effect, she makes an *Alessio*-style argument that by acting in a volunteer capacity, she exposed herself to greater risks than she would have encountered if acting in an official capacity.

¶ 22 As prelude to analyzing the parties' arguments, we must assign the burden of proof. We have acknowledged that the fireman's rule is in essence an exception to the rule of liability established by the rescue doctrine. As an exception, the party seeking the benefit of the fireman's rule has the burden of showing that he comes within its ambit. *See Smith v. Tully,* 665 A.2d 1333, 1335 (R.I.1995). In this case, that party is the Schulenburgs.

¶ 23 An issue of proof is present in the case because our holding precluding application of the fireman's rule is contingent on there being no employment mandate that the professional must engage even though off-duty. We do not know whether such a mandate exists in this case. Neither party has cited, and our research has failed to disclose, any Arizona statute that imposes any obligation on off-duty public safety professionals to respond in an emergency situation. Nor has either party provided any information regarding the Phoenix Fire Department's policies or regulations regarding

**162**

off-duty personnel, including when they might be required to stop and render aid. Consistent with the foregoing assignment of burden, it was the Schulenburgs who were required to prove such a mandate because that proof would be necessary to bring them within the ambit of the fireman's rule. In the absence of any evidence, then, we will assume there was no requirement placed upon Espinoza by her department to stop and render aid while off-duty.

¶ 24 This assumption that Espinoza in an off-duty status was under no legal or professional obligation to stop and render aid essentially decides this case and we need not engage in an extended discussion of the incident. The trial court erred in ruling as a matter of law that the fireman's rule applied. To the contrary, on this record as a matter of law the fireman's rule did not apply.

¶ 25 In reviewing a grant of summary judgment, if the facts are undisputed we may reverse the trial court and grant judgment to the opposing party if merited. *Anderson v. Country Life Insurance Co.*, 180 Ariz. 625, 628, 886 P.2d 1381, 1384 (App.1994). Ordinarily, we would apply this rule and direct entry of judgment for Espinoza on the issue of the fireman's rule. However, we recognize that prior to this decision, the law in Arizona regarding the applicability of the fireman's rule to off-duty professionals was unsettled, including the question of assigning the burden of proof. In fairness, then, it is appropriate to remand to permit Schulenburgs to pursue further discovery to determine whether they can provide the necessary proof consistent with their burden.

¶ 26 The Schulenburgs append an additional argument that essentially attempts to place Espinoza in an on-duty status at the time of this incident. The Schulenburgs assert that Espinoza's receipt of workers' compensation benefits establishes that she was acting in the course and scope of her employment when she was injured. Espinoza responds that she received benefits solely because she was traveling from work and, by statute, off-duty firefighters injured traveling to and from work are eligible for compensation. Ariz.Rev.Stat. § 23-1021.01(A)(Supp.2004). Moreover, Espinoza

notes, the statute specifically provides that its grant of employment status is "solely for the purposes of eligibility for workers' compensation benefits." *Id.*

¶ 27 As in *Orth*, we are not persuaded that the availability of workers' compensation benefits requires application of the fireman's rule. 191 Ariz. at 292, ¶ 7, 955 P.2d at 48. The statutory authorization for such benefits is based on entirely different policy considerations that do not inform our holding nor the application of that holding to the facts of this case. Moreover, that Espinoza happened to be traveling from work instead of being on purely personal time was entirely fortuitous and did not affect her volunteer motivation or status in any way. It would be illogical to draw a distinction on this basis and we decline to do so. In short, we reject the receipt of workers' compensation as a relevant factor in our analysis.

## CONCLUSION

¶ 28 Judged by the record on appeal, Espinoza was a volunteer when she stopped to assist at the accident scene and, as such, was entitled to the benefit of the rescue doctrine. The trial court's decision that she was not is reversed. The case is remanded, however, to permit further proceedings on the fireman's rule issue consistent with this decision.

CONCURRING: PATRICIA K. NORRIS and PATRICIA A. OROZCO, Judges.