SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| ELIZABETH ESPINOZA, an unmarried woman, | ) Arizona Supreme Court ) No. CV-05-0158-PR ) |
| Plaintiff/Appellant, | ) Court of Appeals ) Division One |
| v. | ) No. 1 CA-CV 04-0438 ) |
| CARRINGTON SCHULENBURG, an unmarried woman; JOHN SCHULENBURG and DEBRA SCHULENBURG, husband and wife, | ) Maricopa County ) Superior Court ) No. CV2003-002652 ) ) |
| Defendants/Appellees. | ) **O P I N I O N** ) |

Appeal from the Superior Court in Maricopa County
The Honorable Frank T. Galati, Judge

**REVERSED AND REMANDED**
_____

Opinion of the Court of Appeals, Division One
210 Ariz. 157, 108 P.3d 936 (App. 2005)

**VACATED**
_____

CURRAN & BELVILLE, P.A.                                        Tempe
      By    Christopher J. Curran
            Chad L. Belville
Attorneys for Elizabeth Espinoza

JONES, SKELTON & HOCHULI, P.L.C.                            Phoenix
      By    Ronald W. Collett
            Randall H. Warner
Attorneys for Carrington Schulenburg, John
      Schulenburg, and Debra Schulenburg

HUMPHREY & PETERSEN, P.C.                                   Tucson
      By    Andrew J. Petersen
Attorneys for Amicus Curiae Arizona Association
      of Defense Counsel
_____

**B E R C H**, Vice Chief Justice

¶1        This    case    requires    us    to    decide    whether    the

firefighter's rule bars an off-duty firefighter who volunteered at the scene of an accident from suing the person whose negligence caused the accident. We conclude that it does not. We therefore reverse the grant of summary judgment by the trial court, vacate the decision of the court of appeals, and remand the case for trial.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 On the evening of February 10, 2002, sixteen-year-old Carrington Schulenburg was driving her parents in the family Camaro when they were involved in an accident on State Route 101. While driving home from work with her daughter, Phoenix firefighter and emergency medical technician ("EMT") Elizabeth Espinoza saw the accident scene and stopped to help. A Department of Public Safety ("DPS") officer was already on the scene, and another person had also stopped to assist. Espinoza identified herself as a firefighter/EMT to the DPS officer and went to help the Schulenburgs.

¶3 The Schulenburg vehicle was resting on the left side of the freeway, partially obstructing one lane of traffic. As Espinoza reached inside to turn on the emergency flashers, the car was rear-ended by another car, driven by Casey Barnett. Espinoza suffered a broken hip, a broken wrist, a broken finger, torn knee ligaments, and other injuries. She was paid workers'

- 2 -

compensation benefits as a result of her injuries.

**¶4** Espinoza sued the Schulenburgs, Barnett, and DPS to recover for her injuries. The superior court granted summary judgment to the Schulenburgs on the ground that the firefighter's rule bars Espinoza's claim. That rule prevents a firefighter from suing for the negligence that created the need for rescue. The court of appeals reversed, holding that the firefighter's rule should be narrowly construed so as not to bar the claims of off-duty firefighters. *Espinoza v. Schulenburg*, 210 Ariz. 157, 160, ¶ 13, 108 P.3d 936, 939 (App. 2005). The court remanded, however, for determination of whether Espinoza had a duty as part of her job as a firefighter to stop and help, in which case the court would apparently conclude that the rule should apply to bar her suit. *Id*. at 161-62, ¶¶ 23, 25, 108 P.3d at 940-41.

**¶5** We granted review to decide the proper application of the firefighter's rule to off-duty firefighters. We have jurisdiction in this case pursuant to Article 6, Section 5(3) of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 12-120.24 (2003).

## DISCUSSION

**¶6** We review the grant of summary judgment de novo and view the evidence in the light most favorable to Espinoza, the

party against whom summary judgment was entered. *See Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, 308, ¶ 2, 70 P.3d 435, 437 (2003).

¶7 The rescue doctrine allows an injured rescuer to recover damages from the person whose negligence created the need for rescue. As stated in the forthcoming Restatement of Torts, the doctrine provides that

> if an actor's tortious conduct imperils another or the property of another, the scope of the actor's liability includes any physical harm to a person resulting from that person's efforts to aid or protect the imperiled person or property, so long as the harm arises from a risk that inheres in the effort to provide aid.

Restatement (Third) of Torts: Liability for Physical Harm § 32 (Proposed Final Draft No. 1, 2005) [hereinafter "Restatement"].

¶8 The rescue doctrine declares as a matter of policy that injury to a rescuer is a foreseeable result of the original negligence. Judge Cardozo eloquently stated the justification for the rule as follows: "Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal." *Wagner v. Int'l Ry. Co.*, 133 N.E. 437, 437 (N.Y. 1921). By making a volunteer's response foreseeable as a matter of law, the rescue doctrine bridges what otherwise might be a fatal hole in an injured

volunteer's suit for damages.[1]

¶9        Arizona courts have never expressly adopted the rescue doctrine.  *Cf. Sulpher Springs Valley Elec. Coop. v. Verdugo*, 14 Ariz. App. 141, 144, 481 P.2d 511, 514 (1971) (discussing the rescue doctrine in the context of contributory negligence). Generally, however, absent law to the contrary, Arizona courts follow the Restatement.  *Cunningham v. Goettl Air Conditioning, Inc.*, 194 Ariz. 236, 239, ¶ 14, 980 P.2d 489, 492 (1999).  We do so here.  As Judge Cardozo observed, rescue is a normal, if not always predictable, response to danger.  *See Wagner*, 133 N.E. at 437.  The law should encourage people to respond to those in distress.  The rescue doctrine does so by allowing the possibility of compensation to those who injure themselves while taking risks to help others.

¶10        If Espinoza had been a lay person, the rescue doctrine would permit her suit against the Schulenburgs.  Indeed, the doctrine is probably necessary to support the suit because without it, Espinoza might not be able to show that the

---

[1]    A rescued defendant might argue assumption of the risk or contributory negligence on the part of the rescuer.  At the time the rescue doctrine developed, those defenses typically served as complete bars to recovery.  As a matter of policy, the rescue doctrine thus declared that a reasonable rescuer was not contributorily negligent and did not assume the risk of injury. Those defenses now operate only to comparatively reduce recovery.  *See* Restatement § 32 cmt. d.

Schulenburgs' actions, rather than her own actions on the scene, were the proximate cause of her injuries. Although the rescue doctrine alleviates those concerns, because Espinoza is employed as a firefighter and EMT, the Schulenburgs assert that the firefighter's rule bars her suit.

¶11 The firefighter's rule evolved as an exception to the rescue doctrine: A rescuer who could otherwise recover cannot do so if she is performing her duties as a professional firefighter. *Orth v. Cole*, 191 Ariz. 291, 293, ¶ 9, 955 P.2d 47, 49 (App. 1998). The rule reflects a policy decision that the tort system is not the appropriate vehicle for compensating public safety employees for injuries sustained as a result of negligence that creates the very need for their employment. When the doctrine first came before the Arizona Court of Appeals, that court described the rationale for the firefighter's rule this way:

> Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences.

*Grable v. Varela*, 115 Ariz. 222, 223, 564 P.2d 911, 912 (App. 1977) (quoting *Krauth v. Geller*, 157 A.2d 129, 131 (N.J. 1960)).

In return for removing the firefighters' right to sue, the public trains, equips, and compensates these public safety officers. So while the rescue doctrine expands tort responsibility by extending the duty of care of the negligent person who caused the accident to those who risk their safety to engage in the rescue, the firefighter's rule limits the expansion of tort liability created by the rescue doctrine.

¶12    The firefighter's rule has its historical basis in the law of premises liability, preventing suit against a landowner when a firefighter was injured on the landowner's property while fighting a fire. *See Gibson v. Leonard*, 32 N.E. 182, 184, 186 (Ill. 1892) (finding that a firefighter injured while fighting a fire was a "mere naked licensee" and therefore could recover only for willful acts of the landowner), *overruled by Dini v. Naiditch*, 170 N.E.2d 881 (Ill. 1960).[2]  The rationale for the rule applies equally, however, outside the context of premises liability.  Fires and accidents can occur anywhere, and firefighters respond and risk injury. *See Grable*, 115 Ariz. at 223, 564 P.2d at 912 (noting that the rule is no longer limited to premises liability cases).

_____

[2]    *Dini* discusses several firefighter's rule cases that use traditional premises liability analysis.  Ultimately, that court concluded, as we do, that the analysis has become "an illogical anachronism" that does not serve public policy.  170 N.E. at 885.

- 7 -

¶13    In a few jurisdictions, the firefighter's rule is based on the notion that professional firefighters assume the risk of injury. *See Armstrong v. Mailand*, 284 N.W.2d 343, 349-50 (Minn. 1979); 62 Am. Jur. 2d *Premises Liability* § 431 (1990 & Supp. Westlaw 2005). That doctrine should not serve as the basis in Arizona, however, because assumption of the risk no longer serves as a complete bar to tort recovery under Arizona's comparative fault system. A.R.S. § 12-2505(A) (2003). It therefore does not support the complete bar that the firefighter's rule represents.

¶14    Moreover, to say the firefighter's rule exists because firefighters assume the risk begs a comparison to lay volunteers who similarly assume risk, yet are entitled by the rescue doctrine to sue for compensation. The justification assumes that professionals are more knowledgeable about the risks they face than other volunteers. Although that may be true in many cases, it would also be true of all those with training that has informed them of the risks of a rescue situation. "Assumption of the risk" therefore does not support distinguishing between professional rescuers and other volunteers.

¶15    This court has never addressed the firefighter's rule. The court of appeals, however, has applied the firefighter's rule in one case. *See Grable*, 115 Ariz. at 223, 564 P.2d at

912.  But it has also declined to apply the rule and limited it to emergency situations, *see Orth*, 191 Ariz. at 293, ¶ 10, 955 P.2d at 49, and to the immediate negligence that causes the emergency, but not to subsequent acts, *see Garcia v. City of S. Tucson*, 131 Ariz. 315, 319, 640 P.2d 1117, 1121 (App. 1982).

¶16     These limitations comport with Arizona's policy of protecting its citizens' right to pursue tort claims.  *See* Ariz. Const. art. 18, § 6 ("The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."); *see also id.* art. 2, § 31 (forbidding laws limiting damages for death and injury); *id.* art. 18, § 5 (making contributory negligence and assumption of risk jury questions); *accord Stone v. Ariz. Highway Comm'n*, 93 Ariz. 384, 392, 381 P.2d 107, 112 (1963) ("There is perhaps no doctrine more firmly established than the principle that liability follows tortious wrongdoing; that where negligence is the proximate cause of injury, the rule is liability and immunity is the exception."), *overruled in part by Grimm v. Ariz. Bd. of Pardons & Paroles*, 115 Ariz. 260, 564 P.2d 1227 (1977).

¶17     We adopt the firefighter's rule, but we construe it narrowly.  The rule applies when a firefighter's presence at a rescue scene results from the firefighter's on-duty obligations

as a firefighter.[3]  Those who volunteer to help while off duty thus fall outside the rule, even if they do so to offer their specialized rescue training.  As a result, excluding volunteers from the application of the firefighter's rule serves the important societal goal of encouraging those most qualified to stop and render aid to do so – or at least of not discouraging them from rendering aid by precluding suit for injuries suffered in the course of their volunteer service.

¶18     Off-duty professionals who risk injury to volunteer aid in emergency situations fall outside the policy rationale for the firefighter's rule because they are under no obligation to act.  In volunteering, they are thus going beyond the scope of their employment.  They are also not at the time paid and may

---

[3]    The rule's application to professions other than firefighters is not before us, and the court of appeals has applied the rule only to firefighters. *See Garcia*, 131 Ariz. at 318-19, 640 P.2d at 1120-21 (describing the rule as applying to police officers, but declining to apply it on the facts of that case).  We note, however, that the rationale for the rule would seem to apply equally well to police officers, and other states have consistently applied the rule to them. *See, e.g.*, Richard C. Tinney, Annotation, *Liability of Owner or Occupant of Premises to Police Officer Coming Thereon in Discharge of Officer's Duty*, 30 A.L.R.4th 81, § 8 (1984 & Supp. 2005).  We recognize that the rule has been extended both explicitly and implicitly to other professions. *See Carter v. Taylor Diving & Salvage Co.*, 341 F. Supp. 628 (E.D. La. 1972) (surgeon who was paid for emergency dive site care), *aff'd*, 470 F.2d 995 (5th Cir. 1973); *Griner v. Ga. Farm Bureau Mut. Ins. Co.*, 596 S.E.2d 758 (Ga. Ct. App. 2004) (tow truck driver); *Pinter v. Am. Family Mut. Ins. Co.*, 613 N.W.2d 110 (Wis. 2000) (EMTs).  Absent facts before us, however, we decline to decide the reach of the rule.

not be equipped to confront the situation. They generally lack identification, safety equipment, or the support of trained colleagues. They are, instead, acting just like those whom the rescue doctrine is intended to protect. Application of the firefighter's rule to preclude suit by such off-duty professionals is therefore inappropriate.

¶19     As did the court of appeals, we also conclude that the availability of workers' compensation is not determinative of the application of the firefighter's rule. The definition of "employment status" for peace officers in the workers' compensation statutes was consciously limited by the legislature and relies on policy considerations different from those that inform the tort system. *See* A.R.S. § 23-1021.01(A) (Supp. 2005);[4] 1998 Ariz. Sess. Laws, ch. 60, § 3. The existence of workers' compensation, however, supports the policy rationale for the firefighter's rule by providing some compensation for

---

[4]     A.R.S. § 23-1021.01(A) provides as follows:

> A peace officer or fire fighter as defined in § 1-215 who is injured or killed while traveling directly to or from work as a peace officer shall be considered in the course and scope of employment *solely* for the purposes of eligibility for workers' compensation benefits, provided that the peace officer or fire fighter is not engaged in criminal activity.

(Emphasis added.)

those injured in the line of duty. The fact that off-duty firefighters not traveling to or from work are not eligible for workers' compensation, *see* A.R.S. § 23-1021.01(A), means that most off-duty professionals would not qualify for compensation should they be injured while voluntarily rendering aid in an emergency situation. If the firefighter's rule then applies to preclude suit, such volunteers may have no means of recovery for injuries sustained in a rescue attempt. That hardly seems the appropriate policy response to the altruistic actions of valuable, trained volunteers.

¶20    On the other hand, in cases in which an off-duty firefighter volunteer does qualify for workers' compensation, we need not worry about double recovery, as the workers' compensation fund has a subrogation right against third-party recoveries. A.R.S. § 23-1023(C) (1995). Furthermore, workers' compensation payments are limited and do not cover pain and suffering. Thus while the system itself is not irrelevant to our analysis, the availability of workers' compensation to a particular worker does not control our determination of the applicability of the firefighter's rule.

¶21    While we agree with the court of appeals' general theory that the firefighter's rule should not apply to off-duty firefighters, we disagree with its test based on "an employment

mandate to render aid." *Espinoza*, 210 Ariz. at 160, ¶¶ 14, 15, 108 P.3d at 939. If the existence of an employment duty to stop and render aid determines a firefighter's right to sue, the policies of each government unit would determine the duty owed by the person being rescued. Tort responsibility should not be so arbitrary, nor should the rescued person's responsibility turn on the fortuity of the policies of the employer of the volunteer who stops to render aid.

¶22 Furthermore, a duty to stop or render aid does not necessarily put a firefighter or police officer effectively back on duty. For example, an employer's policy could require firefighters to provide medical attention if they encounter persons in need. The scope and impact of that obligation, including the risks faced by the firefighter, could differ substantially depending on whether the firefighter was on or off duty. An off-duty firefighter, acting in isolation, is unlikely to have the benefits and protections of professional medical and safety equipment or assistance from trained colleagues. Nor will the officer usually be compensated for time spent or injuries incurred in such a situation. The policy that removes the right to sue in return for training and public compensation should not apply in such a situation. The better policy should encourage our best-trained responders to voluntarily render aid.

¶23      A policy requiring volunteer firefighters to join any firefighting effort they encounter may, in contrast, have a different impact, and may essentially put those officers back on duty.  *See Waggoner v. Troutman Oil Co.*, 894 S.W.2d 913, 916 (Ark. 1995) (volunteer firefighter under a statutory duty to respond to fires in district and who took control of fire hose in fighting fire near his home was acting as a fireman "as a matter of law").  A policy that puts a paid officer back on duty in a rescue situation and returns that officer to the system of public compensation may justify application of the firefighter's rule.  Thus, although department policy may be a factor in determining the firefighter's work status, the central question remains whether the firefighter is on the scene as a result of his on-duty obligations as a firefighter.

¶24      Several states use a multi-factor analysis to decide whether an officer is acting in a "professional capacity" and thus whether the firefighter's rule applies.  *See, e.g.*, *Hodges v. Yarian*, 62 Cal. Rptr. 2d 130, 133-34 (Ct. App. 1997); *Alessio v. Fire & Ice, Inc.*, 484 A.2d 24, 30 (N.J. Super. Ct. App. Div. 1984); *Campbell v. Lorrenzo's Pizza Parlor, Inc.*, 567 N.Y.S.2d 832, 833 (App. Div. 1991).  We decline to require this analysis because application of the rule should not turn on a firefighter's conduct at the scene.  Such a test creates the

anomalous situation that those who act *more* professionally on the scene are *less* likely to be allowed to seek recovery for injuries because they may be deemed to be acting in an official capacity and thus be subject to the firefighter's rule. When those who do have professional skills volunteer to render aid in an emergency situation, they should not be discouraged from using those skills. The inquiry should instead focus on why the professional is on the scene.[5]

¶25 Espinoza's actions in this case were those of an off-duty volunteer. No evidence in the record shows and no claim is made that she was anything but a volunteer. Driving home in her own car with her daughter, she was clearly off duty. She wore no uniform and had no equipment or support, as she would had she been on duty. Espinoza was not at the accident scene as a result of her on-duty obligations as a firefighter. The firefighter's rule therefore does not bar her suit.

**CONCLUSION**

¶26 The trial court erred in granting summary judgment to the Schulenburgs. Because Espinoza volunteered to render aid at

---

[5] *Hodges*, *Alessio*, and *Campbell*, cited above, are also distinguishable because they involve off-duty police officers. The presence of a gun and a badge and the ability to make an arrest distinguishes those situations from the one before us. Such situations may require additional analysis, and we decline to decide those questions today.

the accident scene while she was off duty, the firefighter's rule does not apply to bar her lawsuit. We therefore reverse the trial court's decision, vacate the decision of the court of appeals, and remand the case for trial.

_____
Rebecca White Berch, Vice Chief Justice

CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice


_____
W. Scott Bales, Justice