202 P.3d 507

Colleen WHITE, an individual; Connor White and Alexa White, minor children of Eric and Colleen White, by and through their mother, Colleen White; James White and Christine White, husband and wife; Lynn McMinn, an individual on her own behalf and on behalf of all other statutory beneficiaries of Jason Wolfe, Plaintiffs/Appellants,

v.

STATE of Arizona, a body politic; Maricopa County, a body politic; Value Options, Inc., a Virginia corporation; Empact Suicide Prevention Center, an Arizona corporation; VO of Arizona, Inc., an Arizona corporation; Safdar Ali, M.D. and Jane Doe Ali, husband and wife, Defendants/Appellees.

No. 1 CA–CV 07–0496.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 26, 2008.

Review Denied Feb. 10, 2009.

Michael Napier PC by Michael Napier and Anthony J. Coury, Phoenix, Attorneys for Plaintiffs/Appellants.

Norling Kolsrud Sifferman & Davis PLC by Russell A. Kolsrud, Mark S. Sifferman, and Greg D. Honig, Scottsdale, Terry Goddard, Arizona Attorney General by Richard P. Broder, Tucson, Attorneys for Defendants/Appellees State of Arizona, et al.

Humphrey & Petersen PC by Andrew J. Petersen, Matthew G. Hayes, Ryan S. Andrus, and Marshall Humphrey, III, Tucson, Attorneys for Defendants/Appellees Empact Suicide Prevention Center.

## OPINION

BROWN, Judge.

¶ 1 This appeal requires us to examine the applicability and scope of the firefighter's rule. The issues we address are (1) whether the rule applies to police officers and (2) whether the superior court properly applied the rule to bar negligence claims filed on behalf of two police officers who died in the course of responding to an emergency situation. For the following reasons, we affirm the superior court's decision to grant summary judgment.

## BACKGROUND

¶ 2 On August 28, 2004, Doug Tatar had a confrontation with two other residents of his apartment complex in the courtyard area. One of the residents was carrying a baseball bat and the other had a gun. Tatar retrieved a gun from his apartment, returned to the courtyard, and shot the individual holding the baseball bat. Responding to one or more calls to 9–1–1, a number of on-duty police officers and paramedics arrived at the scene. Tatar had retreated to his apartment and eventually made an additional 9–1–1 call. Several of the officers, including Officer White and Officer Wolfe, approached Tatar's second floor apartment. While Tatar was still on the phone with the 9–1–1 operator, the officers kicked in the front door. Tatar began firing shots, killing Officers White and Wolfe. With other officers returning fire, Tatar then shot and killed himself.

¶ 3 The beneficiaries of Officers White and Wolfe ("Plaintiffs") filed suit against the State of Arizona, Maricopa County, ValueOptions, Inc., VO of Arizona, Inc., Safdar Ali; and Empact Suicide Prevention Center (collectively "Defendants").[1] According to Plaintiffs, in May 2004, Tatar's family members reported to Empact that Tatar had a mental condition that caused him be a danger to himself and others. In June, Tatar's mother completed and submitted an application for involuntary evaluation to ValueOptions. Employees from ValueOptions and Empact evaluated Tatar but declined to place him into treatment. Plaintiffs alleged that the behavior those employees observed, along with the information included in the application for evaluation, indicated it was likely that future intervention by law enforcement would be necessary to protect Tatar from engaging in violent conduct. Based on that information, Defendants' failure to properly diagnose and treat Tatar allegedly amounted to negligence and resulted in Tatar's violent conduct on August 28, 2004. Additionally, Plaintiffs alleged that the deaths of White and Wolfe

---

1. Plaintiffs alleged that the State of Arizona and Maricopa County were vicariously liable for the acts and omissions of the employees and agents of ValueOptions, Inc., VO of Arizona, Inc., and Empact.

were a direct and proximate result of negligence on the part of all Defendants.[2]

¶4 Defendants moved for summary judgment on the grounds that the firefighter's rule barred Plaintiffs from recovery.[3] After considering various pleadings, the superior court granted the motion, finding that Defendants' alleged negligence did not fall within the independent negligence exception to the firefighter's rule described in *Garcia v. City of South Tucson*, 131 Ariz. 315, 640 P.2d 1117 (App.1981). The court later clarified its prior ruling:

> To reiterate, the injury in *Garcia* was caused, not by the gunman's actions or anyone responsible in the chain of proximate causation for the gunman's actions, but by the wholly independent act of ordering an "assault" *against* the gunman. Here, Plaintiff alleges that Tatar shot the officers and that Defendants' negligence was the proximate cause of his doing so; Defendants did nothing that was not mediated through Tatar. *Garcia* is therefore not on point, as it excludes from the firefighter's rule only the *independent negligence* of a third person.

Plaintiffs timely appealed and this court has jurisdiction pursuant to Arizona Revised Statutes section 12–2101(B) (2003).

## DISCUSSION

¶5 Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). We review de novo whether summary judgment was properly entered and view the evidence in the light most favorable to the party against whom judgment was entered. *Espinoza v. Schulenburg*, 212 Ariz. 215, 216, ¶6, 129 P.3d 937, 938 (2006).

¶6 The firefighter's rule was initially addressed in Arizona by this court in *Grable v. Varela*, 115 Ariz. 222, 564 P.2d 911 (App. 1977).[4] In *Grable*, a child started a fire that spread to an unoccupied residence. *Id.* at 223, 564 P.2d at 912. A firefighter who was injured trying to extinguish the fire sued the child and his parents. *Id.* at 222–23, 564 P.2d at 911–12. The superior court granted summary judgment to the defendants based on the firefighter's rule. *Id.* at 223, 564 P.2d at 912. On appeal, this court described the rule generally as prohibiting an injured firefighter from suing persons whose only connection with the injury was their negligent conduct in creating the fire. *Id.* We also explained the public policy behind the rule:

> [I]t is the fireman's business to deal with that very hazard and hence ... he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said that there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences.

*Id.* (quoting *Krauth v. Geller*, 31 N.J. 270, 273–74, 157 A.2d 129, 131 (1960)). Applying the firefighter's rule, we concluded that the injured firefighter's claims were barred because a firefighter "has no cause of action against one whose negligence caused the fire in which he was injured." *Id.*

¶7 In 2006, our supreme court addressed the applicability of the firefighter's

---

2.  The complaint included claims for negligence, negligent hiring, negligent supervision, negligent training, and medical negligence.

3.  All defendants except Empact moved for summary judgment. The record does not reflect that Empact joined in the motion; however, the court's final judgment included dismissal of the complaint against Empact. Plaintiffs do not assert any error in this regard and therefore we do not address it.

4.  The firefighter's rule has also been referred to in other jurisdictions as the fireman's rule, the public-safety officer's rule, the police officer's rule, the professional rescuer doctrine, and the professional rescuer rule. *See Rinn v. Razee*, 912 A.2d 939, 939 n. 1 (R.I.2006); *Fordham v. Oldroyd*, 171 P.3d 411, 412 n. 1, ¶1 (Utah 2007); *Ballou v. Nelson*, 67 Wash.App. 67, 71–73, 834 P.2d 97, 99–100 (1992).

rule. *Espinoza,* 212 Ariz. 215, 129 P.3d 937. In that case, an off-duty firefighter had stopped to help with a car accident. *Id.* at 216, ¶ 21, 129 P.3d at 938. While she was reaching into the wrecked vehicle to turn on the emergency flashers, that vehicle was rear-ended by another, causing multiple injuries to the firefighter. *Id.* at ¶ 3. She sued for damages relating to her injuries, but the superior court determined that her claim was barred by the firefighter's rule. *Id.* at ¶ 4. This court reversed, holding that the rule should not be applied to off-duty firefighters. *Id.* at ¶ 5. Although the supreme court agreed with our determination, the court accepted review to clarify proper application of the rule. *Id.* The court discussed the rule's history and purpose, which "reflects a policy decision that the tort system is not the appropriate vehicle for compensating public safety employees for injuries sustained as a result of negligence that creates the very need for their employment." *Id.* at 217, ¶ 11, 129 P.3d at 939.[5] Adding to this court's description of the public policy rationale in *Grable,* the supreme court recognized as follows:

> In return for removing the firefighters' right to sue, the public trains, equips, and compensates these public safety officers. So while the rescue doctrine expands tort responsibility by extending the duty of care of the negligent person who caused the accident to those who risk their safety to engage in the rescue, the firefighter's rule limits the expansion of tort liability created by the rescue doctrine.

*Id.* at 217–18, ¶ 11, 129 P.3d at 939–40. Based on public policy grounds, as opposed to assumption of risk principles, the supreme court adopted the firefighter's rule, noting it should be "construed narrowly" and that it "applies when a firefighter's presence at a rescue scene results from the firefighter's on-duty obligations as a firefighter." *Id.* at 218, ¶ 17, 129 P.3d at 940. The court then held that the rule does not apply to off-duty firefighters who volunteer to assist in emergency situations. *Id.* at 218–19, ¶ 17, 129 P.3d at 940–41.

■ ¶ 8 The court in *Espinoza* did not determine whether the firefighter's rule should be extended to other professionals who respond to emergencies, such as police officers; however, the court noted "that the rationale for the rule would seem to apply equally well to police officers, and other states have consistently applied the rule to them." *Id.* at 218–19 n. 3, ¶ 17, 129 P.3d at 940–41 n. 3 (citing Richard C. Tinney, Annotation, *Liability of Owner or Occupant of Premises to Police Officer Coming Thereon in Discharge of Officer's Duty,* 30 A.L.R.4th 81, § 8 (1984 & Supp.2005)).[6] Likewise, we see no compelling reason, and Plaintiffs have suggested none, for differentiating between firefighters and police officers for purposes of allocating liability in the context of emergency responses. In *Orth,* we recognized the overlapping policy considerations:

> Firefighters and police officers are hired, trained, and compensated to deal with dangerous situations affecting the public as a whole. Because of their exceptional responsibilities, when firefighters and police officers are injured in the performance of their duties the cost of their injuries should also be borne by the public as a

---

5. The supreme court also explained and adopted the "rescue doctrine," which "allows an injured rescuer to recover damages from the person whose negligence created the need for rescue" based on the notion that "[t]he law should encourage people to respond to those in distress." *Id.* at 217, ¶ 9, 129 P.3d 937. The firefighter's rule developed as an exception to the rescue doctrine: "A rescuer who could otherwise recover cannot do so if she is performing her duties as a professional firefighter." *Id.* at ¶ 11 (citing *Orth v. Cole,* 191 Ariz. 291, 293, ¶ 9, 955 P.2d 47, 49 (App.1998)). In *Espinoza,* the court noted that the rescue doctrine was "probably necessary to support the suit because without it, Espinoza might not be able to show that the [defendants]'

actions, rather than her own actions on the scene, were the proximate cause of her injuries." *Id.* at ¶ 10. Here, Plaintiffs have challenged the trial court's ruling solely on the grounds that an exception to the firefighter's rule applies, or alternatively, that the rule should be abolished. Thus, we do not address whether the rescue doctrine is applicable to the negligent conduct alleged in this case.

6. In *Garcia,* Division Two of this court stated that the firefighter's rule applies to police officers, but found the rule inapplicable to the situation presented in that case. 131 Ariz. at 318–19, 640 P.2d at 1120–21.

whole, through the workers' compensation laws and the provision of insurance benefits and specialty disability pensions.

191 Ariz. at 293, ¶ 10, 955 P.2d at 49 (quoting *Gray v. Russell*, 853 S.W.2d 928, 931 (Mo. 1993)). Consistent with the rationale stated in *Orth*, as well as the approach taken by the majority of courts from other jurisdictions, we hold that the firefighter's rule in Arizona applies to police officers. *See, e.g., Moody v. Delta W., Inc.*, 38 P.3d 1139, 1141–43 (Alaska 2002) (adopting the rule as to firefighters and public safety officers); *Lambert v. Schaefer*, 839 S.W.2d 27, 29 (Mo.Ct.App.1992) (finding the rule applicable to police officers based on cases from other jurisdictions); *Aetna Cas. & Sur. Co. v. Vierra*, 619 A.2d 436, 439 (R.I. 1993) (noting that the rule extends to police officers).

█ ¶ 9 Construing the firefighter's rule narrowly, *see Espinoza*, 212 Ariz. at 218, ¶ 17, 129 P.3d at 940, we must determine whether the facts of this case support the superior court's determination that Plaintiffs' claims are barred by the rule. Initially, we recognize that the liability shield created by this rule has specific limitations. Prior decisions in Arizona have recognized the following exceptions to the firefighter's rule: First, the rule does not apply to situations in which the professional rescuer is injured as a result of the "independent negligence" of a third party. *Garcia*, 131 Ariz. at 319, 640 P.2d at 1121. Second, it does not apply to non-emergency situations such as routine building inspections. *Orth*, 191 Ariz. at 291, 293, ¶¶ 1, 10, 955 P.2d at 47, 49. Third, it does not apply to off-duty rescue professionals who voluntarily respond in emergency situations. *Espinoza*, 212 Ariz. at 218–19, ¶ 17, 129 P.3d at 940–41.[7]

█ ¶ 10 Plaintiffs do not dispute that Officers White and Wolfe responded to an emergency situation and were on-duty when they did so. Plaintiffs argue, however, that Defendants' conduct here fits within the independent negligence exception discussed in

*Garcia*. Plaintiffs assert that the police were summoned solely because Tatar shot someone, not because Defendants were negligent. Additionally, Plaintiffs contend that *third party* negligence, regardless of when it occurs, is not protected by the rule.

¶ 11 In *Garcia*, police officers from the City of Tucson and the City of South Tucson were called to a residence where a gunman had been firing random shots. 131 Ariz. at 317, 640 P.2d at 1119. Officer Garcia, who worked for the City of Tucson, was shot by an officer from the City of South Tucson after a sergeant negligently ordered an assault without warning the City of Tucson officers. *Id.* at 318, 640 P.2d at 1120. In declining to apply the firefighter's rule to the negligent conduct of the sergeant, the court stated:

> The negligence which caused Garcia's injury was the negligence of the sergeant in control of the South Tucson police in ordering an assault without warning. The act which occasioned the summoning of the police in the first instance was the random shooting by the gunman. Since Garcia's injuries were caused by the *independent* negligence of a third person, the fireman's rule is inapplicable.

*Id.* at 319, 640 P.2d at 1121 (emphasis added). According to Plaintiffs, Garcia stands for the proposition that if the person who causes the injury is not the person whose conduct brought an officer to the scene, the person causing the injury is not protected from liability. In other words, plaintiffs contend the firefighter's rule does not apply to claims brought against *any* third parties. Plaintiffs assert that Defendants, as third parties, are liable because they caused the injuries to Officers White and Wolfe; whereas Tatar merely brought the officers to the scene. Plaintiffs thus contend that *Garcia* limits protection of the firefighter's rule only to those, such as Tatar, who have a "first party negligence relationship to the summoning of the police."

---

**7.** Some states have adopted an additional exception for acts involving reckless behavior, willful conduct, or intentional torts. *See Hopkins v. Medeiros*, 48 Mass.App.Ct. 600, 607 n. 14, 724 N.E.2d 336, 342 n. 14 (2000); *Hallquist v. Mid-* *den*, 196 S.W.3d 601, 605 (Mo.Ct.App.2006). We need not address whether a similar exception should be adopted in Arizona because Plaintiffs have not alleged that Defendants' conduct was reckless, willful, or intentional.

¶ 12 We reject the notion that the firefighter's rule does not apply to any third party conduct and we decline to limit *Garcia* in the manner suggested by Plaintiffs. The key to this court's decision in *Garcia* was that the sergeant's negligence was independent, indicating that his conduct was unrelated to the reason the police were called to the scene. As we noted in *Garcia*, the "pertinent inquiry is whether or not the negligently created risk which resulted in plaintiff's injury was the reason for his being at the scene in his professional capacity." *See id.* at 318, 640 P.2d at 1120 (citing *Scott v. E.L. Yeager Constr. Co.*, 12 Cal.App.3d 1190, 91 Cal.Rptr. 232 (1970)). Stated differently, if the actor's tort can be established without proof of the act that brought the firefighter or police officer to the scene of the emergency and created the risk of injury, then the act is independent.

¶ 13 In *Garcia*, the sergeant's negligent act of ordering an assault without informing all the officers involved could be established without the need to prove anything about why Officer Garcia was called to the scene. The act that brought Officer Garcia to the scene of the emergency and created the risk of harm was the gunman's random firing of a weapon; it was not the sergeant's order to carry out an assault. *See id.* at 319, 640 P.2d at 1121. Thus, the exception to the firefighter's rule carved out in *Garcia* is premised on the independent nature of the negligent act, regardless of when the act occurs. *See id.*[8]

¶ 14 In this case, Plaintiffs alleged that Defendants acted negligently in allowing Tatar to remain untreated, resulting in the deaths of Officers White and Wolfe. Without proof of Tatar's conduct, Plaintiffs would be unable to link Defendants' alleged negligence to the deaths of these officers. Thus, to establish liability for negligence, Plaintiffs were required to prove the act that brought the officers to Tatar's apartment and created the risk of injury; therefore, Defendants' alleged negligence was not independent.

¶ 15 Additionally, *Garcia* teaches that negligence is not independent if the actor's tort "caused or contributed" to the emergency that in turn caused the injury or death of the police officer. *Id.; see also Grable*, 115 Ariz. at 223, 564 P.2d at 912. Here, Plaintiffs specifically alleged that Officers White and Wolfe died because Defendants' negligence caused Tatar to shoot the officers. The only reasonable conclusion to be drawn from this allegation is that Defendants' conduct caused or contributed to the situation that gave rise to the police officers' response to the emergency calls and created the risk that resulted in the officers' deaths. Defendants are therefore protected from liability by the firefighter's rule.[9]

¶ 16 Our decision is consistent with the public policy underlying the firefighter's rule. Officers White and Wolfe were hired, trained, and compensated to confront dan-

---

8. During oral argument, Plaintiffs' counsel asserted that the firefighter's rule applies only to the "immediate negligence" that causes the emergency. *See Espinoza*, 212 Ariz. at 218, ¶ 15, 129 P.3d at 940 (noting that the court of appeals has limited the rule to "emergency situations and to the immediate negligence that causes the emergency, but not to subsequent acts") (citing *Orth*, 191 Ariz. at 293, ¶ 10, 955 P.2d at 49, and *Garcia*, 131 Ariz. at 319, 640 P.2d at 1121). We find that the supreme court's use of the word "immediate" is consistent with our interpretation of the exception noted in *Garcia*—that the firefighter's rule does not apply to third party independent negligence. *See Garcia*, 131 Ariz. at 319, 640 P.2d at 1121; Black's Law Dictionary 764 (8th ed.2004) (defining "immediate" as "having a direct impact" or "without an intervening agency"). Thus, we reject Plaintiffs' assertion that the supreme court intended to limit application of the rule based on the *timing* of the tortfeasor's negligent conduct.

9. Plaintiffs cite *McKernan v. General Motors*, 269 Kan. 131, 3 P.3d 1261 (2000), in support of their suggested interpretation of the exceptions to the firefighter's rule. In *McKernan*, a police officer filed a product liability action against an auto manufacturer relating to an injury he suffered when a hood strut exploded as he was trying to extinguish a car fire. *Id.* at 132, 3 P.3d at 1262. The Kansas Supreme Court declined to apply the firefighter's rule to protect the manufacturer, noting that product liability claims are filed against parties "whose negligence did not create the need for the firefighter at the scene" and that allowing such claims was consistent with the public policy basis of the firefighter's rule in Kansas. *Id.* at 140–41, 3 P.3d at 1267. Applying the independent negligence test we have explained here, we find no inconsistency between the rationale given in *McKernan* and this decision.

gerous situations such as the circumstances presented in this case. It is tragic that these two officers died while performing their duties; however, consistent with the policy rationale for the firefighter's rule, the losses suffered by their loved ones should be borne by the public as a whole rather than the individuals whose conduct occasioned the need for the officers' involvement. *See Espinoza*, 212 Ariz. at 217–18, ¶ 11, 129 P.3d at 939–40.

¶ 17 We also find support from decisions in other jurisdictions that have applied the firefighter's rule to bar negligence claims by professional rescuers against third parties. *See Moody*, 38 P.3d 1139; *Young v. Sherwin–Williams Co.*, 569 A.2d 1173 (D.C.1990); *Berko v. Freda*, 93 N.J. 81, 459 A.2d 663 (1983).[10] Both *Berko* and *Moody* involved vehicle owners who left the car keys in the ignition. *See Moody*, 38 P.3d at 1140; *Berko*, 459 A.2d at 664. The vehicles were stolen and the thieves subsequently caused accidents that injured police officers who were responding. *See Moody*, 38 P.3d at 1140; *Berko*, 459 A.2d at 664. In each case, the firefighter's rule barred the officers' claims for negligence against the vehicle owners. *See Moody*, 38 P.3d at 1143; *Berko*, 459 A.2d at 664.

¶ 18 In *Young*, an intoxicated truck driver wrecked his truck on a bridge and was left hanging from the steering wheel some fifty feet off the ground. 569 A.2d at 1174. Unable to hold his position, he fell toward the ground. *Id.* at 1175. A firefighter tried to catch the driver to break the fall and was injured. *Id.* The firefighter sued the truck driver's employer for negligence in failing to conduct a background check. *Id.* at 1177. The court found that the claim was barred by the firefighter's rule because the negligence

of the employer "was not independent of the risk that necessitated [the firefighter]'s presence; the alleged negligence is a factor contributing to the creation of that risk." *Id.* at 1179.

¶ 19 Similar to *Berko, Moody,* and *Young,* in this case Plaintiffs alleged negligent conduct by one or more third parties. Plaintiffs asserted that Defendants allowed Tatar to remain in public without proper diagnosis and treatment. In doing so, Plaintiffs necessarily alleged that Defendants caused or contributed to the creation of the risk that brought Officers White and Wolfe to the scene where the shootings occurred. Thus, we reject Plaintiffs' argument that Defendants' alleged negligence was too attenuated to protect them from liability under the firefighter's rule.

¶ 20 Plaintiffs rely on several cases from other jurisdictions in which courts declined to apply the rule. Most of those cases, however, fall under one or more established exceptions to the rule: the injury resulted from independent negligence; the injury occurred in a non-emergency situation; or the injury occurred when the rescue professional was off-duty. *See Harris v. Chicago Hous. Auth.*, 235 Ill.App.3d 276, 176 Ill.Dec. 313, 601 N.E.2d 1011 (1992) (independent negligence); *Winston v. BMA Corp.*, 857 S.W.2d 541 (Mo.Ct.App.1993) (non-emergency); *Gould v. George Brox, Inc.*, 137 N.H. 85, 623 A.2d 1325 (1993) (off-duty and non-emergency); *Aetna*, 619 A.2d at 436 (independent negligence); *Sutton v. Shufelberger*, 31 Wash.App. 579, 643 P.2d 920 (1982) (independent negligence and non-emergency).[11] Finally, Plaintiffs assert the firefighter's rule is inherently unfair, the trend in the courts is to relax or abolish it, and the rule has reached the end of its applicability in Arizona. We

**10.** The firefighter's rule was subsequently abolished by statute in New Jersey. *See Ruiz v. Mero*, 189 N.J. 525, 917 A.2d 239, 247 (2007). Nonetheless, the court's application of the rule in *Berko* is helpful to our analysis.

**11.** Plaintiffs also cite *Gail v. Clark*, 410 N.W.2d 662, 666 (Iowa 1987), in support of their position that the rule does not apply to third party negligence. In that case, a police officer was injured by Clark, who was drag racing while intoxicated. *Id.* at 664. The officer sued two convenience stores who sold Clark the alcohol, alleging a violation of Iowa's dramshop statute. *Id.* The

stores argued that Clark's lawsuit was barred by the firefighter's rule. *Id.* at 665. On appeal, the court held that the stores could be held liable because the injured officer was performing a law enforcement activity unrelated to a violation of the dramshop statute. *Id.* at 666. The court specifically recognized that under such circumstances, a police officer is afforded protection under the dramshop statute. *Id.* Thus, the exception found in *Gail* was based on statutory authority; therefore, we do not find the case persuasive here.

acknowledge that the rule has been criticized. *See Christensen v. Murphy,* 296 Or. 610, 678 P.2d 1210, 1217 (1984); W. Page Keeton et al., *Prosser and Keeton on Torts* § 61, at 431–32 (5th ed.1984). Courts in at least three states have declined to follow the firefighter's rule while another state has abolished it through legislative action. *See Wills v. Bath Excavating & Constr. Co.,* 829 P.2d 405 (Colo.Ct.App.1991); *Ruiz,* 917 A.2d at 247; *Christensen,* 678 P.2d at 1218; *Minnich v. Med–Waste, Inc.,* 349 S.C. 567, 564 S.E.2d 98, 103 (2002). At least twenty-five states, however, have adopted the firefighter's rule in one form or another. *See Moody,* 38 P.3d at 1140–41. Additionally, the Utah Supreme Court and the New Mexico Supreme Court have recently adopted arguably broader versions of the firefighter's rule than what is currently recognized in Arizona. *See Baldonado v. El Paso Natural Gas Co.,* 143 N.M. 288, 176 P.3d 277, 281 (2007); *Fordham,* 171 P.3d 411, 412–13. Thus, we do not detect an existing trend to relax or abolish the firefighter's rule. As to the whether the rule is unfair, or has reached the end of its applicability in Arizona, the rule has been adopted by our supreme court and thus state. *See Bade v. Ariz. Dep't of Transp., Motor Vehicle Div.,* 150 Ariz. 203, 205, 722 P.2d 371, 373 (App.1986) ("[The court of appeals] is bound by a decision of the Arizona Supreme Court and has no authority to overrule or disregard it.").

### CONCLUSION

¶ 21 For the foregoing reasons, we hold that the firefighter's rule applies to police officers. On the facts presented here, we conclude that the Defendants' alleged negligent conduct is protected by the firefighter's rule and therefore Plaintiffs cannot pursue their negligence claims against Defendants. Accordingly, we affirm the superior court's decision to grant summary judgment in favor of Defendants based on the firefighter's rule.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge and PATRICIA K. NORRIS, Judge.