308 P.3d 1183

**Ross READ, a married individual, Plaintiff/Appellant/Cross–Appellee,**

v.

**Brittini Alexa KEYFAUVER, Defendant/Appellee/Cross–Appellant.**

**No. 1 CA–CV 12–0007.**

Court of Appeals of Arizona, Division 1, Department E.

Aug. 27, 2013.

* Judge Philip Hall was a sitting member of this court when the matter was assigned to this panel of the court. He retired effective May 31, 2013. In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to A.R.S. § 12–145, the Chief Justice of the Arizona Supreme Court has designated Judge Hall as a judge pro tempore in the Court of Appeals, Division One, for the purpose of participating in the resolution of cases assigned to this panel during his term in office.

Friedl Richardson By Thomas M. Richardson and Raechel R. Barrios, Phoenix, And Knapp & Roberts, PC By David L. Abney, Scottsdale, Co–Counsel for Plaintiff/Appellant/Cross–Appellee.

DeCiancio Robbins PLC By Joel DeCiancio and Christopher Robbins, Tempe, And Diane M. Lucas PC By Diane M. Lucas and Michael S. Ferraro, Phoenix, Co–Counsel for Defendant/Appellee/Cross–Appellant.

Law Office of Elliot Glicksman, P.L.L.C. By Elliot Glicksman, Tucson, Attorney for Amicus Curiae Arizona Concerns Of Police Survivors, Inc.

Yen Pilch & Komadina & Flemming, P.C. By Robert E. Yen, Phoenix, Attorney for Amicus Curiae Arizona Fraternal Order Of Police.

## OPINION

BROWN, Judge.

¶ 1 Ross Read, a law enforcement officer, was injured while providing assistance to Brittini Alexa Keyfauver, who was trapped in a vehicle after a rollover accident. In the ensuing action for damages, the trial court ruled as a matter of law that the firefighter's rule barred Read from pursuing a negligence claim against Keyfauver for injuries he sustained while rendering aid. Read appeals the court's decision, asserting (1) the rule should not apply here because he voluntarily assisted Keyfauver and (2) the rule necessarily invokes an assumption of risk question, which only a jury can determine. Because we conclude that Read's negligence claim is precluded by the firefighter's rule, we affirm.

## BACKGROUND

¶ 2 While parked on the shoulder of southbound Interstate–17, Read was writing a traffic citation when he heard tires skidding. Read looked in the direction of the sound and observed Keyfauver lose control of her vehicle, roll through the median, and land upside down in the northbound lanes of the freeway.

¶ 3 Read immediately reported the rollover to dispatch, grabbed a fire extinguisher and first-aid kit from his patrol car, and ran across the median to the over-turned vehicle. Read saw Keyfauver inside the vehicle scratching at her window. In response, he told Keyfauver to close her eyes and cover her face. Read then kicked in the window, placed his foot on the door frame, and successfully extracted Keyfauver from the vehicle and placed her on the ground, where he administered minor first aid until paramedics arrived. In the course of pulling Keyfauver out of the vehicle, Read sustained a permanent and incapacitating injury to his left knee.

¶ 4 Read subsequently sued Keyfauver, alleging her negligent driving was the proximate and direct cause of his injury. Keyfauver answered, asserting the firefighter's rule

and assumption of risk as affirmative defenses. Both parties sought summary judgment on the applicability of the firefighter's rule. Read argued he was under no obligation to try to extract Keyfauver from her vehicle and his decision to do so was beyond the scope of his employment. Read also asserted that the rule should not bar his complaint because his actions fell outside the policy rationale for the rule. Keyfauver countered that because Read was on-duty and present at the scene, the firefighter's rule precluded him from recovering damages for her alleged negligent conduct.

¶ 5 The trial court ruled that Keyfauver was entitled to summary judgment. Read unsuccessfully moved for a new trial, asserting for the first time that the trial court's ruling was contrary to law because allowing a judge, instead of a jury, to decide whether to apply the firefighter's rule violates the assumption of risk provision found in the Arizona Constitution. Read appealed from the court's final judgment, and for the reasons discussed in a separate memorandum decision filed herewith, we have jurisdiction over Read's appeal pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(A)(1).

## DISCUSSION

¶ 6 Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(a).[1] We review de novo whether summary judgment was properly entered and view the evidence in the light most favorable to Read. *White v. State,* 220 Ariz. 42, 44, ¶ 5, 202 P.3d 507, 509 (App.2008).

■ ¶ 7 "The rescue doctrine allows an injured rescuer to recover damages from the person whose negligence created the need for the rescue." *Espinoza v. Schulenburg,* 212 Ariz. 215, 217, ¶ 7, 129 P.3d 937, 939

(2006); *see also* Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 32 (2010) ("[I]f an actor's tortious conduct imperils another[,] the scope of the actor's liability includes any harm to a person resulting from that person's efforts to aid or to protect the imperiled person[.]"). As a matter of policy, "injury to a rescuer is a foreseeable result of the original negligence." *Espinoza,* 212 Ariz. at 217, ¶ 8, 129 P.3d at 939. As such, the rescue doctrine "allow[s] the possibility of compensation to those who injure themselves while taking risks to help others." *Id.* at ¶ 9. The doctrine thus expands tort liability "by extending the duty of care of the negligent person who caused the accident to those who risk their safety to engage in the rescue[.]" *Id.* at 217–18, ¶ 11, 129 P.3d at 939–40. In so doing, the rescue doctrine encourages individuals to respond to those in distress. *Id.* at 217, ¶ 9, 129 P.3d at 939.

■ ¶ 8 The firefighter's rule is an exception to the rescue doctrine: "A rescuer who could otherwise recover cannot do so if she is performing her duties as a professional firefighter." *Id.* at 217, ¶ 11, 129 P.3d at 939. The rule thus specifically limits the expansion of tort liability the rescue doctrine created. *Id.* at 217–18, ¶ 11, 129 P.3d at 939–40. In the context of firefighters, the rule "negates liability to a fireman by one whose negligence causes or contributes to the fire which in turn causes the death or injury of the fireman." *Grable v. Varela,* 115 Ariz. 222, 223, 564 P.2d 911, 912 (App.1977).

■ ¶ 9 In Arizona, the rule is grounded on public policy:

> Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences.

1. Former Arizona Rule of Civil Procedure 56(c) has been renumbered as Rule 56(a), substituting the word "dispute" for "issue."

*Id.* As our supreme court has recognized, the rule thus reflects a policy choice that "the tort system is not the appropriate vehicle for compensating public safety employees for injuries sustained as a result of negligence that creates the very need for their employment." *Espinoza*, 212 Ariz. at 217, ¶ 11, 129 P.3d at 939; *see also Orth v. Cole*, 191 Ariz. 291, 293, ¶ 10, 955 P.2d 47, 49 (App.1998) (recognizing that the cost of firefighters' and police officers' injuries should be borne by the public as a whole).

¶ 10 In short, "[i]n return for removing the firefighters' right to sue, the public trains, equips, and compensates these public safety officers." *Espinoza*, 212 Ariz. at 217, ¶ 11, 129 P.3d at 939. The supreme court in *Espinoza* limited its application of the rule to firefighters, but noted "that the rationale for the rule would seem to apply equally well to police officers[.]" *Id.* at 218 n. 3, ¶ 17, 129 P.3d at 940 n. 3. Two years after *Espinoza*, this court determined that the rule applies to police officers. *White*, 220 Ariz. at 45–46, ¶ 8, 202 P.3d at 510–11.

■ ¶ 11 As recognized in *Espinoza*, however, the firefighter's rule should be construed narrowly. 212 Ariz. at 218, ¶ 17, 129 P.3d at 940. As such, several exceptions have emerged. First, when the "independent negligence" of a third party causes the public safety professional's injury, the rule is inapplicable. *Garcia v. City of South Tucson*, 131 Ariz. 315, 319, 640 P.2d 1117, 1121 (App.1981). Second, non-emergency situations do not trigger application of the rule. *Orth*, 191 Ariz. at 291, 293, ¶¶ 1, 10, 955 P.2d at 47, 49. And third, the rule is inapplicable to off-duty public safety professionals who voluntarily respond to an emergency. *Espinoza*, 212 Ariz. at 218–19, ¶ 17, 129 P.3d at 940–41.

¶ 12 Relying generally on the third exception, Read asserts the firefighter's rule does not bar his claim. In *Espinoza*, an off-duty firefighter (Espinoza), who was also an emergency medical technician, was driving home from work and stopped to help at a car accident scene. *Id.* at 216, ¶ 2, 129 P.3d at 938. The wrecked vehicle was on the side of the highway, partially obstructing traffic. *Id.* at ¶ 3. As Espinoza reached into the vehicle to turn on the emergency flashers, the car was rear-ended by another car, causing her to suffer injuries. *Id.* She sued for damages, but the superior court determined the firefighter's rule barred her negligence claim. *Id.* at ¶ 4.

¶ 13 Recognizing that public policy considerations form the basis of the firefighter's rule, our supreme court held that the firefighter's rule "applies when a firefighter's presence at a rescue scene results from the firefighter's on-duty obligations as a firefighter." *Espinoza*, 212 Ariz. at 218, ¶ 17, 129 P.3d at 940. The court expressly excluded off-duty volunteers from the application of the firefighter's rule, reasoning that doing so "serves the important societal goal of encouraging those most qualified to stop and render aid[.]" *Id.* at 219, ¶ 17, 129 P.3d at 941. The court reasoned that such volunteers "are under no obligation to act" and, in acting, go "beyond the scope of their employment." *Id.* at ¶ 18. The court recognized that an off-duty firefighter is not paid to render aid, may not be equipped to handle the situation, and may lack identification, safety equipment, or back-up support. *Id.* For those reasons, the court explained that "[t]hey are ... acting just like those whom the rescue doctrine is intended to protect." *Id.* Emphasizing that the "central question [is] whether the firefighter is on the scene as a result of his on-duty obligations as a firefighter," *id.* at 220, ¶ 23, 129 P.3d at 942, the court concluded the firefighter's rule did not bar Espinoza's claim because she had no on-duty obligation as a firefighter to be at the rescue scene, *id.* at ¶ 25.

■ ¶ 14 Read argues his duty as a law enforcement officer was merely to secure and investigate the accident scene and ensure that no emergency required him to take further action on Keyfauver's behalf. According to Read, after he called dispatch requesting emergency assistance and ran to Keyfauver's overturned vehicle to secure the

area, he believed he had taken all necessary steps to control the situation safely and thus had no duty or obligation to do anything further to help Keyfauver. Read also avowed that as part of his employment with the Arizona Department of Public Safety, he had no duty or obligation to extract Keyfauver and he would not have been disciplined or been in violation of any rule or policy if he had failed to do so.

¶ 15 Based on those facts, Read asserts that in extracting Keyfauver from her vehicle, he exceeded the scope of his employment and became a volunteer as contemplated by *Espinoza* and therefore falls outside the scope of the firefighter's rule. Read emphasizes that he lacked safety equipment and support from fellow officers, two factors the court in *Espinoza* noted in drawing its distinction between volunteers and on-duty firefighters. *See Espinoza*, 212 Ariz. at 219, ¶ 18, 129 P.3d at 941.

■ ¶ 16 We are not persuaded that Read's conduct falls within the volunteer exception. In determining whether the firefighter's rule applies, the critical question is whether a public safety professional is "on the scene as a result of his on-duty obligations[.]" *Id.* at 220, ¶ 23, 129 P.3d at 942. Application of the rule therefore does not, as Read's argument suggests, turn on his responsibilities and obligations once he arrived on the scene; rather, the key to the analysis is whether Read's on-duty obligations as a law enforcement officer compelled his presence at the scene in the first instance. Consistent with this articulation of the rule, *Espinoza* explained that "application of the rule should not turn on a firefighter's conduct at the scene." *Id.* at ¶ 24. It is undisputed Read was on-duty at the time of the accident and had an on-duty obligation to respond to and secure the accident scene when he observed Keyfauver's rollover. Additionally, in the context of the firefighter's rule, it is irrelevant that by extracting Keyfauver from her vehicle, Read took steps beyond what was required under the relevant departmental policies of his employer. The court in

*Espinoza* explained that application of the rule should not turn on the existence of an "employment mandate to render aid" because doing so could create an arbitrary standard based on the policies of individual government units. *Id.* at 219, ¶ 21, 129 P.3d at 942. Because Read was not acting as a volunteer for purposes of the rule when he removed Keyfauver from her vehicle, his negligence claim against her is barred.

■ ¶ 17 Read further contends the firefighter's rule is a form of assumption of risk and whether the rule applies is therefore a jury question. *See* Ariz. Const. art. 18, § 5 ("The defense . . . of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury."). In *Espinoza*, our supreme court explained, however, that the assumption of risk doctrine does not provide an appropriate basis for application of the firefighter's rule. 212 Ariz. at 218, ¶¶ 13–14, 129 P.3d at 940. The court reasoned that the assumption of risk doctrine "no longer serves as a complete bar to tort recovery under Arizona's comparative fault system . . . [and] therefore does not support the complete bar that the firefighter's rule represents." *Id.* at ¶ 13. Thus, because our supreme court has held that the firefighter's rule is not founded on assumption of risk principles, we reject Read's argument to the contrary.

¶ 18 Nor are we persuaded by Read's additional argument that because the firefighter's rule is premised on the notion that a defendant owes no duty to firefighters, any action on the part of the firefighter must be based on assumption of risk. In *Espinoza*, the court formally adopted the rescue doctrine. *Id.* at 217, ¶ 9, 129 P.3d at 939. By doing so, the court recognized that the doctrine expanded the scope of tort liability in Arizona "to encourage people to respond to those in distress." *Id.* In declining to apply the rescue doctrine to firefighters, however, the court emphasized that "the tort system is not the appropriate vehicle for compensating public safety employees for injuries sustained as a result of negligence that creates the

very need for their employment." *Id.* at ¶ 11. Thus, as set forth in *Espinoza*, application of the firefighter's rule effectively excludes certain would-be claims from the tort system altogether. And, because the doctrine of assumption of risk applies only to tort actions, the doctrine is simply not relevant within the context of the firefighter's rule.

¶ 19 In sum, while we recognize that the supreme court in *Espinoza* may not have addressed the precise issue Read raises here, the court's analysis and reasoning sufficiently addresses the underpinnings of the firefighter's rule and explains why it is not based on assumption of risk principles. The rule is based on a principle of exclusion, limiting the scope of the tort system, rather than, as Read suggests, a derivative of assumption of risk principles.

¶ 20 Finally, briefs filed by amici curiae that represent the interests of public safety professionals assert that the firefighter's rule (1) should be abandoned because it is antiquated and (2) constitutes a form of assumption of risk and is thus a jury question.[2] To the extent amici urge us to abolish the firefighter's rule, even if we were inclined to do so, we are bound by the rule because the supreme court has adopted it. *See White*, 220 Ariz. at 48–49, ¶ 20, 202 P.3d at 513–14 (acknowledging criticism of the firefighter's rule but concluding that we are bound to follow it). As to assumption of risk, *Espinoza* sufficiently addresses the issue.

## CONCLUSION

¶ 21 For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Keyfauver.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge, and JOHN C. GEMMILL, Judge.

---

**2.** Amici also argue the firefighter's rule discriminates against emergency responders. This argument was never raised or argued by the parties and therefore we do not address it. *See Town of Chino Valley v. City of Prescott*, 131 Ariz. 78, 84,

638 P.2d 1324, 1330 (1981) ("[I]t is the rule that amici curiae are not permitted to create, extend, or enlarge issues beyond those raised and argued by the parties.").